655 P.2d 454

**Rex T. EVANS, Plaintiff-Respondent,**

**and**

**Gerald D. Scott, Additional Necessary Plaintiff-Respondent,**

**and**

**Mildred Evans and Donna Scott, Additional Plaintiffs-Respondents,**

**v.**

**Duane JENSEN, Defendant-Appellant.**

**No. 13850.**

Court of Appeals of Idaho.

Dec. 8, 1982.

J.W. Crowther, Malad City, and Clark Gasser and Steven Richert, of Green, Service, Gasser & Kerl, Pocatello, for defendant-appellant.

R.M. Whittier of Whittier & Souza, P.A. Pocatello, for plaintiffs-respondents.

SWANSTROM, Judge.

Rex Evans sued R. Duane Jensen, seeking an injunction to restrain him from obstructing a roadway and underpass leading through Jensen's land to Evans' property. Evans also sought damages caused by Jensen's obstruction of the road and by his removal of a cattle guard installed by Evans. Evans claimed a right to use the road as a public thoroughfare. Jensen counterclaimed seeking a declaration of his exclusive right to use the road and underpass and damages for Evans' alleged harassment of Jensen and his family. Several years after the suit was filed, Evans sold his property to Gerald Scott, whom Jensen brought into the suit as an additional plaintiff. As an alternative basis for relief,

Scott contended that the plaintiffs had established a right to use the road as a prescriptive easement. Both Evans' and Scott's wives later were joined as parties to the suit.

Without specifying the reasons for its conclusions, the district court held that the plaintiffs had a right to use the road and granted the injunction. The court also awarded Evans damages for removal of the cattle guard. The court dismissed Jensen's counterclaim.

On appeal, Jensen raises several issues. He asserts the judgment should be reversed because the district judge erred: (1) in denying his motion for summary judgment; (2) in not requiring Evans and Scott to elect between their inconsistent theories of (a) the right to use the road as a public roadway or (b) acquisition of a prescriptive right to use the roadway; (3) in allowing evidence which allegedly contradicted the terms of a federal condemnation judgment; (4) by finding that Evans and Scott had the right to use the underpass; (5) in restraining Jensen from using the area around the underpass as a cattle feeding ground; and (6) by requiring Jensen to pay damages for removing the cattle guard.

The facts framing these issues date back to 1961, when the United States condemned parcels of land belonging to Evans and Royal B. Jensen, for construction of Interstate Highway 15. Royal B. Jensen is appellant's father and predecessor in interest. Before the interstate highway was built, Evans had access to his land from U.S. Highway 191 by means of a prescriptive easement running across Jensen's land. The new highway, running parallel to U.S. 191 a few hundred feet to the west, would bisect both properties, cutting off access from the old highway to the portions of the properties lying west of the interstate.

In order to ensure continued access to their properties, both Evans and Royal Jensen hired Glen Fuller, an attorney experienced in condemnation proceedings, to represent them in negotiations with the government. What both landowners wanted from the government was the construction of an underpass, below the new highway, high enough and wide enough to accommodate the passage of livestock and farm machinery. On August 9, 1962, Fuller sent a letter to the U.S. Attorney, stating that a single underpass fourteen feet high and eighteen feet wide would be acceptable to both his clients. Both Evans and Royal Jensen signed the letter stating their acceptance.

In the negotiations Evans and the government agreed upon the price that was to be paid for the land taken from Evans. A judgment was entered as to this parcel, awarding Evans the agreed sum. Jensen and the government could not agree upon the price Jensen was to be paid for his land, so a jury trial was held solely to determine the amount of just compensation. After this trial, a judgment was entered as to this parcel, awarding Jensen the sum awarded by the jury.

In constructing the interstate highway, the government built the requested fourteen by eighteen foot underpass on what had been Jensen's property. The government took fee simple title to the land on which the highway and underpass were built. It also secured easements several hundred feet long and fifty-five feet wide across Jensen's land on both ends of the underpass to provide permanent access. In this opinion we refer to those as the "approach easements." Shortly after completion of construction, the government transferred its interest in the approach easements and the underpass to the State of Idaho. The eastern-most easement terminated at the edge of old U.S. 191, which had become a county road, and the other one joined the old prescriptive easement leading across Jensen's land to Evans' farm. The construction of the highway had obliterated the eastern portion of the old prescriptive easement road. The following sketch for illustrative purposes, is reproduced from one of the exhibits at trial.

As soon as the highway was finished, Evans and Royal Jensen began feuding over Evans' right to use the underpass and the approach easements. Evans contended that he had a right to use the underpass and easements as a public road to gain access to the remaining portion of the old prescriptive easement leading to his land. Royal Jensen claimed that Evans had no such right, because the judgment entered as to the Jensen parcel referred only to Jensen's right to use the underpass.

After years of dispute, Evans filed a civil suit in Oneida County against Jensen claim-ing that Jensen had blocked his access to his land by storing machinery in the underpass and by allowing his cattle to use it as a loafing shed. The parties resolved that case by stipulation in 1966. Jensen recognized Evans' right to use the old prescriptive easement to get to his land. Moreover, both parties agreed that neither would take any action directly or indirectly to interfere with the other's use of the roadway.

The dispute erupted again in 1970. Evans and Royal Jensen came to blows when Evans removed a portion of the fence across the eastern end of the approach ease-

ment and installed a cattle guard in conjunction with the existing gate. The cattle guard was located entirely on county property just at the boundary of the approach easement. In 1972, R. Duane Jensen, became a party to the feud when he purchased his father's interest in the land. Relations between Evans and the younger Jensen rapidly became as sour as those between Evans and Royal Jensen. Evans again claimed that access to his farm was blocked by cattle wintering in the underpass.

These events prompted Evans to file the present suit against Duane Jensen in March of 1975. In May, 1975, he added another count to his complaint after Jensen ripped out the cattle guard. At trial Evans produced evidence that a bulldozer was needed to remove a morass of manure which had accumulated in the underpass during the winter, blocking his access during the spring when he needed to get to his land. Following this trial, the judge issued the restraining order against Jensen and awarded damages to Evans.

I

The first issue raised by appellant concerns the alleged error of the district court in denying his motion for summary judgment. The order of the judge recited "that there are genuine issues of material fact existing." He denied motions for summary judgment filed by both sides.

An order denying a motion for summary judgment is not a final order and a direct appeal ordinarily cannot be taken from it. I.A.R. 11(a). It is also the general rule that an order *denying* a motion for summary judgment is not reviewable on appeal from a final judgment. *All-States Leasing Co. v. Pacific Empire Land Corp.,* 31 Or.App. 733, 571 P.2d 192 (1977); *Fleitz v. Van Westrienen,* 114 Ariz. 246, 560 P.2d 430 (Ariz. App.1977). *See* Annot., 14 A.L.R.3d 896 (1965). The same general rule prevails in federal courts. *Boyles Galvanizing & Plating Co. v. Hartford Acc. & Ind. Co.,* 372 F.2d 310 (10th Cir.1967); *Dutton v. Cities Service Defense Corp.,* 197 F.2d 458 (8th Cir.1952).

We have found just one Idaho case dealing with this issue, *Vincen v. Lazarus,* 93 Idaho 145, 456 P.2d 789 (1969). In that case the Idaho Supreme Court unanimously affirmed a district court judgment for the plaintiffs, which had been entered following a trial. One of the issues considered in the appeal was the denial of the defendant's motion for summary judgment. In a special concurring opinion, then Chief Justice McFadden and Justice Donaldson expressed "serious doubts" whether the court, on appeal from a final judgment, should review the denial of a summary judgment motion. They gave two reasons. The first they quoted from *Home Indemnity Co. v. Reynolds & Co.,* 38 Ill.App.2d 358, 187 N.E.2d 274, 278 (1963):

> * * * To deny a review seems to be unjust. But to grant it * * * would be unjust to the party that was victorious at the trial, which won judgment after the evidence was more completely presented, where cross-examination played its part and where witnesses were seen and appraised.
>
> The greater injustice would be to the party which would be deprived of the jury verdict. Otherwise, a decision based on less evidence would prevail over a verdict reached on more evidence and judgment would be taken away from the victor and given to the loser despite the victor having the greater weight of evidence. This would defeat the fundamental purpose of judicial inquiry.
>
> We hold that if a motion for summary judgment is improperly denied the error is not reversible for the result becomes merged in the subsequent trial. 187 N.E.2d at 278.

93 Idaho at 152, 456 P.2d at 796.

For the second reason, the two Justices quoted from *Bell v. Harmon,* 284 S.W.2d 812, 814 (Ky.1955):

> The Federal appellate courts have recognized the limited scope of summary judgment procedure, and have consistently cautioned trial courts against granting motions for summary judgment if any

doubt exists as to the right of a party to a trial. To hold that there may be a review of the trial court's determination that a party is entitled to a trial would be inconsistent with this admonition to proceed cautiously when granting a summary judgment. It would put the appellate court in the position of trying the question of doubt in the mind of the trial judge. We do not think this would be proper review.

93 Idaho at 152, 456 P.2d at 796.

In our view, by entering an order denying summary judgment, the trial court merely indicates that the matter should proceed to trial on its merits. *See Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co.,* 12 Ariz.App. 424, 471 P.2d 309 (1970). The final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied. Any legal rulings made by the trial court affecting that final judgment can be reviewed at that time in light of the full record. This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on an interlocutory motion. *Bell v. Harmon, supra.* We are persuaded that we should now adopt the general rule. We decline to review the trial judge's decision denying Jensen's motion for summary judgment.

## II

We likewise reject Jensen's claim that the district court should have required the plaintiffs to elect between their inconsistent theories of the case. It is true that it was inconsistent for the plaintiffs to contend on the one hand that they were entitled to use the underpass as a public road and on the other that they had a right to use it as a prescriptive easement. However, I.R.C.P. 8(e)(2) does not require that a party's claims be consistent. The rule states definitely: "A party may state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal or equitable grounds or both." [Emphasis added.]

Moreover, the language in the federal condemnation judgment referred to "a perpetual and assignable easement to construct, operate and maintain approach roads to a machine pass, together with the right of ingress and egress thereto." This language lends support to Evans' theory that the approach easements and the underpass were of a "public" and nonexclusive nature. On the other hand, there was evidence to support the theory that the old roadway across Jensen's lands—the roadway which now forms the link between Evans' property and the approach easements—was a prescriptive roadway easement. Viewed in this way, the two theories proffered by Evans were complimentary, not inconsistent. Each theory could be said to apply to a different segment of the right-of-way claimed by Evans.

## III

We next consider whether the trial court erred in admitting evidence which Jensen alleges tended to contradict or vary the terms of the federal condemnation judgments. Jensen contends that it is plain from the face of these judgments that only the owners of his property were given the right to use the underpass. The judgment relating to the Jensen land specifically reserved to its

owners . . . and to their heirs, successors, and assigns, the right of access to their remaining lands on the west, which will be available through a machine pass to be constructed at Interstate Highway Station 144 + 20. . . .

The judgment relating to the land taken from Evans did not contain a similar provision. Jensen argued at trial, and on appeal, that the lack of any reference to a right of access in the judgment against Evans precludes him from asserting that the under-

pass was built for his use as well as for Jensen's.

At trial the attorney who had represented both Evans and Royal Jensen in the 1962 federal condemnation actions was called as a witness by plaintiffs. Over objection, the attorney was permitted to testify that Evans and Royal Jensen had once agreed that if the government would build a single underpass beneath the interstate highway, it would satisfy both their needs. A copy of the attorney's letter of August 9, 1962, containing such a proposal, and containing the signatures of both his clients—to show their acceptance—was admitted into evidence.

■ Jensen contends that no evidence should have been allowed to impeach the federal judgments and that the court erred when it admitted the letter attorney Fuller wrote to the U.S. Attorney in 1962 and when it allowed Fuller to testify about Evans and Royal Jensen's agreement concerning the underpass. He asserts, correctly, that parol or extrinsic evidence is not admissible to contradict, impeach or vary official records, citing *Stafford v. Field,* 70 Idaho 331, 218 P.2d 338 (1950). As a general rule, where a court's decree is a clear and unambiguous, neither pleadings, findings nor matters outside the record may be used to change its meaning or construe it. *Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978).

■ However, the trial court held the letter was not offered to impeach or contradict the federal condemnation judgment. We agree; it did not have that effect. First, we note that the judgment relating to Jensen's land did not purport to set forth the rights of any nonowners of the property. Neither on its face does the judgment exclude the right of third parties to use the underpass. The same can be said about the other federal court records admitted in evidence. Therefore, the offered letter did not contradict, impeach or vary the condemnation documents.

Secondly, even if the judgments entered in respect to both the Jensen lands and the Evans lands granted only to Jensens the right to use the underpass, there was nothing to prevent the Jensens and Evans from agreeing between themselves that both would use the underpass for their respective purposes. Such an agreement would impeach neither the condemnation judgment relating to the Jensen property nor the one relating to the Evans property. The 1962 letter of attorney Fuller and the 1966 stipulation between Evans and Jensen are evidence of such an agreement. Both the letter and the stipulation were signed by Mrs. Jensen and by her husband, Royal B. Jensen.

We hold that the trial court did not err in admitting evidence of the agreement between the parties. Based upon this evidence, the subsequent stipulation of the parties (or their predecessors) in 1966, and the other facts summarized in this opinion, the trial court concluded, as a matter of law, that the underpass was built for the joint use of Evans and Jensen. We concur.

### IV

■ In its amended judgment the trial court prohibited Jensen from interfering in any way with the plaintiffs' right of access to their property. It restrained him from storing machinery or other items in the underpass. It further restrained him from using the approach easements on either side of the underpass as a cattle feeding area or from allowing his cattle to remain in the underpass or to use it as a loafing shed. We view these restraints as proper.

The evidence at trial showed that during the winter months Jensen customarily permitted his cattle to be sheltered in the underpass. As a result, substantial amounts of manure would accumulate, thus making the roadway impassable when Evans needed to use it to get to his farm in the spring.

However, the evidence showed that long before the interstate highway was built, the Jensens had used the area where the underpass is now located as a cattle feeding ground. The evidence also showed that it is essential to Jensen's ranching operation that his cattle have free access through the underpass to get from the pasture west of

the interstate to the feeding area to the east. The stipulation which Evans and Royal Jensen entered into in 1966 recognized these facts. It provided that the mere presence of Jensen's cattle on the roadway "shall not be considered an obstruction of [Evans] in the use of such road. . . ."

However, the amended judgment dated June 6, 1980, also contained the following paragraph:

IT IS FURTHER ORDERED That Duane Jensen remove his cattle, machinery and/or any other obstructions which interfere with the use of the machine underpass and the easement used in connection therewith as aforedescribed.

In our view the above language could be construed broadly to prohibit Jensen's cattle from being on the roadway except when being herded or moved from one side of the highway to the other. This would be an unreasonable restriction to place on Jensen's use of his property. It would not be in keeping with the agreement of Evans and Jensen's predecessor in interest. Accordingly, we direct the trial court to modify the language of the amended judgment to clarify the scope of activities prohibited within the easement. As modified, the judgment should not infringe upon Jensen's continued right to use his property east of the highway for cattle feeding purposes so long as he does so in a manner that will not cause blockage of the roadway and underpass, nor create unreasonable maintenance problems for other users of the easement.

V

Jensen next contends the district court erred in awarding Evans damages caused by what the court described, in the amended judgment, as Jensen's "willful removal, in 1975, of a cattle guard which Evans had installed at the eastern end of the approach easement to the underpass." From the record it appears that the cattle guard was left lying near the approach easement after it was removed from the ground. The only finding made by the court in support of the damage award, was "that [Jensen] wrong-

fully removed a cattle guard which had been installed by [Evans] and that [Evans] was damaged thereby in the sum of $500.00"

It was not disputed that Evans had installed the cattle guard in 1970 on the edge of the county right-of-way where there formerly had been only a gate leading to the approach easement. Evans testified, without objection at first, that he had been given permission by the Oneida County Commissioners to install the cattle guard at that location. However, Jensen objected when Evans testified that "to replace it at this time [1980] would cost a thousand dollars." There was no evidence as to what it cost Evans to install the cattle guard in 1970, or what its replacement cost would have been in 1975. Jensen also objected to the testimony of a county commissioner who had been called as a rebuttal witness by Evans to establish that the commissioners had given permission for installation of the cattle guard. Jensen contended, unsuccessfully, that the county permission could only be properly shown by introduction of the minutes of the Board of County Commissioners.

We hold that it was not error for the trial court to allow the county commissioner to testify about circumstances surrounding the installation of the cattle guard. Nor was it error to allow the witness to say that the cattle guard was permitted by the county in an attempt to help "settle the problem" between Evans and Jensen. The witness' testimony was proper to show the commissioners had knowledge of Evans' request to install the cattle guard; that Evans was told he could install it; that the commissioners had knowledge when it had been installed and that they discussed it with both Evans and Jensen at the time of its installation. We find no abuse of discretion in admitting this evidence. We hold that permission to install and maintain the cattle guard on the county right-of-way could be shown in this way without producing minutes of the meeting or meetings when such permission was given.

Jensen argues that the county could not grant to Evans the right to occupy a public roadway with any permanent structure or device for a purely private purpose. He cites *Keyser v. City of Boise,* 30 Idaho 440, 165 P. 1121 (1917) and *Boise City v. Sinsel,* 72 Idaho 329, 241 P.2d 173 (1952). These cases deal with structures which were "obstructions" to travel. They hold the owners of such structures have no right as against the municipality to maintain such structures. Those cases, and similar ones, are inapposite here. There was no evidence in this case indicating that the cattle guard installed by Evans was an obstruction to travel upon the county road or the approach easement. In fact, the evidence showed it presented a lesser obstruction than the gate it replaced. More importantly, the permission for it to be on a public right-of-way had been given and not revoked. We uphold the trial court's determination that Evans was entitled to install, and is now entitled to replace, the cattle guard. Accordingly, we will not disturb the damage award on the asserted ground that the cattle guard was unauthorized.

However, the court made no findings as to whether the cattle guard was destroyed, damaged or merely removed. The measure of damages the court applied cannot be determined. Consequently the damage award must be vacated. On remand, the trial court is instructed to reexamine the question of damages awarded for removal of the cattle guard, making appropriate findings and conclusions.

In summary, the injunctive relief granted by the amended judgment is affirmed with respect to the cattle guard, and affirmed as modified in accord with this opinion concerning the scope of activities prohibited within the approach easement. The damage award is vacated. The parties shall each bear their own costs and attorney fees.

WALTERS, C.J., and BURNETT, J., concur.