686 P.2d 74

**V.J. HUNT dba V.J. Hunt Construction Company, Plaintiff-Counter-defendant and Appellant,**

v.

**Lambert A. and Betty MAYR, and Kenneth P. and Lonette Zander, Defendants-Counter-claimants and Respondents.**

No. 14652.

Supreme Court of Idaho.

Aug. 9, 1984.

Ronald S. George, Pocatello, for plaintiff-counter-defendant and appellant.

D. James Manning, Pocatello, for defendants-counter-claimants and respondents.

BISTLINE, Justice.

On April 19, 1978, plaintiff, V.J. Hunt, entered into contracts with defendants, Lambert A. and Betty Mayr and Kenneth P. and Lonette Zander (hereafter "homeowners"), to construct houses for each of them. The contracts provided that the houses would be built according to the plans supplied by the homeowners except for redline alterations which were to be mutually agreed upon before construction. A provision for the supply of and payment for "extras" was included. After the homeowners moved into their houses, they began noticing problems with the construction of the houses. Because of their dissatisfaction with the construction of their homes and the repairs and attempts at repairs by Hunt, the homeowners refused to pay the balance due on their contracts—$4,035.75 on the Mayr contract and $10,534.09 on the Zander contract. Hunt thereafter brought actions against the homeowners, which actions were consolidated for trial. Hunt sought to collect the balance due on the contracts, plus $100,000 in special damages incurred as a result of loss of income to his business, loss of reputation, and disruption of his relationship with his subcontractors, all claimed to have been occasioned by the homeowners' failure to complete payment on their contracts.[1] The homeowners then filed answers and counterclaims seeking damages for the cost of repairs and loss of value to their homes as well as for inconvenience and discomfort as a result of the faulty construction work, and for embarrassment and humiliation and impairment of credit due to the filing of liens against the homes by Hunt's subcontractors and material suppliers.

The district court, after trial without a jury, awarded damages to the homeowners for the cost of repairs. Additionally, the court awarded the Mayrs $5,000 in general damages and $5,000 in attorney's fees; the Zanders were awarded $7,500 in general damages and $5,000 in attorney's fees. The court also awarded both the Mayrs and the Zanders the value of liens placed on the houses by subcontractors and material suppliers "to be held in trust, in such form as the parties may agree, or ... as subsequently ordered by the Court, until such time as there was a final determination of the validity and amount of the lien claims then in litigation pending," R., p. 93, as well as attorney's fees to be prorated among the lien claimants. Hunt was allowed offsets against the homeowners' damages awards for the balances due on the contracts as well as the cost of certain "extras."

On appeal, Hunt argues that the trial court erred in awarding damages to the homeowners for the cost of repairs

1. The district court entered a partial summary judgment order dismissing Hunt's claim for special damages after motion for summary judgment made by the homeowners was uncontested by Hunt.

necessitated by the faulty construction work. After reviewing the record we hold that the trial court's $450 award to each of the homeowners for "defects in the installation of styrofoam insulation around the foundation" (Finding of Fact VII, R., p. 82) of the homes is not supported by substantial and competent evidence in the record. The original blue prints specified that two inches of styrofoam insulation be placed on the foundation walls with no insulation in the floor joists or the outside vents. Hunt deviated from the requirements of the blueprints and instead placed six inches of insulation under the floor and insulated the vents. He testified that he had discussed with the homeowners the fact that the plans were inadequate and if followed would result in a great deal of heat loss and would not supply their insulation needs. He stated: "I told them I would put in the six-inch fiberglass insulation under the floor simply because it was the logical and the best way to do it. And even though it would cost me more to do it that way, that I wouldn't charge them an extra for it." Tr., Vol. II, p. 575. Hunt testified that the homeowners agreed to and were appreciative of this deviation from the original blueprints. Tr., Vol. II, p. 575. Neither of the homeowners disputed Hunt's testimony that they agreed to the departure from the blueprints but merely offered testimony concerning the relative merits of both procedures. The evidence being uncontroverted that the parties agreed to this alteration of the blueprints, we fail to find any support for the trial court's award of $450 to each.

■ We also hold that the trial court's award of $200 to the homeowners for defects relating to footing depth are not supported by the record. The contract provision relating to the footing depth provided that:

"Due to the necessity of moving several large rocks, Builder agrees to pay for all excavating and backfill and grading up to the following agreed upon limits $500.00 allowance for digging and grading for footings for house and garage and backfill and rough grade around foundation walls."

Plaintiffs' Ex. B, R., p. 63.

There is no dispute in the record that Hunt incurred the $500 in excavating, backfill and grading pursuant to the contract. Thus, the cost of any additional back filling necessary to protect the footings must be borne by the homeowners.

■ Hunt contends that the other damages for repairs awarded are not supported by substantial and competent evidence in the record. Hunt argues that the trial court's award of damages for improper wiring, insulation in the homeowners' ceilings and attics, warping in the Zanders' ceiling and the Mayrs' entry door were erroneous. He contests these awards not on the ground that he is not contractually responsible or that the contract has been modified, as was the case above, but that the trial court awarded too much for the individual repairs. It is apparent, however, that the trial court set the awards at intermediate figures between the more costly approaches submitted by the homeowners and the less expensive approaches offered by Hunt. The trial court's findings are supported by substantial, albeit conflicting, evidence and will not be disturbed on appeal. *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982); *Javernick v. Smith*, 101 Idaho 104, 609 P.2d 171 (1980). Hunt's second assignment of error is that the trial court erred in awarding to the homeowners the amount of the lien claims filed by contractors and material suppliers, the validity of which was presently being litigated. In his contracts with the homeowners, Hunt specifically agreed that he would pay his contractors and suppliers out of the contract payments made by the homeowners before taking any money for himself. Hunt did not comply with this obligation, but rather paid his contractors and suppliers only $90,000 of the $109,700 in payments he received leaving $17,000 in bills unpaid, which failure resulted in liens being filed against the residences. Hunt does not contest the amount of the liens, Tr., Vol. II, p. 420, nor the fact that the home-

owners, when and if the subcontractors obtained a judgment against them in their lien foreclosure actions, would have an action against him. Hunt argues only that the homeowners were not entitled to collect damages from him to pay off the liens until the validity of those liens was resolved in another action. The trial court did not, however, award the amount of the liens to the homeowners as damages outright but instead awarded them "to be held in trust, ... until such time as there was a final determination of the validity and amount of the lien claims in litigation pending ...." Amended Judgment, R., p. 95. The trial court thus merely sought to assure that the homeowners would be protected from having to pay the lien claims without resort to further litigation in the event that the lien claims were later held to be valid and enforceable by foreclosure. We do not find error in the trial court's resolution of this problem or in the court's decision to resolve this litigation as expeditiously as possible without the necessity of a third action being brought to further burden the judicial docket.[2]

Hunt's final assignment of error is that the trial court erred in awarding attorney's fee to the homeowners. The judgment in this case was rendered on April 2, 1982; thus the trial court's award of attorney's fees was made in accordance with the provisions of I.R.C.P. 54(e)(1) which provides that attorney's fees may be awarded to the prevailing party or parties when the court finds that the case "was brought, pursued or defended frivolously, unreasonably or without foundation ...."

■ Hunt argues that if this Court determines that damages were improperly awarded, he, rather than the homeowners, would have been the prevailing party and thus attorney's fees could not have been

properly awarded to the homeowners.[3] He also argues that there is no basis in the record for the district court's determination that Hunt's claim was pursued unreasonably and without foundation. The trial court found that:

"[T]he [homeowners] are the prevailing part[ies] to the degree that many of their claimed defects were conceded to exist, but that notwithstanding the fact the plaintiff knew or should have known of the defects, he did nothing about them and furthermore brought suit against defendants ... alleging substantial monetary damages for loss of business and loss of business reputation though such claims were without foundation. Therefore the Court awards attorneys fees ... for the reason [the contractor's] claim was pursued unreasonably and without foundation."

R., p. 81.

There is substantial support in the record for the trial court's findings supporting its determination that the homeowners were the prevailing parties and that Hunt's claim was pursued unreasonably and without foundation; hence, it will not be set aside.

■ Hunt additionally argues that the trial court's award of a total of $10,000 in attorney's fees is clearly excessive, it being in excess of the amount submitted in the homeowners' affidavit of costs. The affidavit of costs not being part of the record before this Court on appeal, we are unable to review Hunt's contentions in this regard and the award will be presumed to have been properly entered. *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980); *Dawson v. Mead*, 98 Idaho 1, 557 P.2d 595 (1976).

The trial court decision is affirmed in part, reversed in part, and remanded for entry of an order modifying the judgment

---

2. It must be remembered that if this litigation were brought precipitately, such was done by the complaining party herein, Hunt, not by the homeowners.

3. I.R.C.P. 54(d)(1)(B) establishes the guidelines pursuant to which the trial court must determine whether a party is the "prevailing party":

"In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, ...."

in accordance with this opinion. Each party to bear their own costs and attorney's fees.

DONALDSON, C.J., and SHEPARD, J., concur.

BAKES, J., concurs in result.

SHEPARD, Justice, specially concurring.

I write only to express my disagreement with the approach of the dissent. I believe the issue of damages for "mental anguish" is non-existent in the present case.

The answer and cross-complaint of the respondents does not seek damages for "mental anguish," but rather for slander of title, impairment of credit, inconvenience and discomfort, embarrassment, and humiliation. The findings of fact, conclusions of law, and judgment of the trial court only find and award general damages, with no mention therein of "mental anguish." Likewise, the majority opinion today only affirms the award of general damages, with no mention therein of "mental anguish." It is only the contention of the appellant which translates the damage portion of respondents' answer and counterclaim into the term "mental anguish." The dissent accepts that translation of terms and thus engages in battle over a non-existent straw man.

In the instant action, Hunt filed a lien against respondents' property and instituted the present action, in which he made claim for damages for lost business profits and loss of business reputation by reason of being unable to pay his creditors. On an *uncontested* motion for summary judgment those claims of Hunt were denied and the district judge concluded that the Hunt claims asserted in his principal action "were without foundation." In the trial of respondents' causes of action against Hunt, the evidence was more than sufficient to support an award of general damages as found after trial to the court based on slander of title, impairment of credit, inconvenience and discomfort. In my view, the groundless filing of a lien against respondents' property prima facie is a slander of title and an impairment of respondents' credit. Additionally, evidence taken from the standpoint of respondents would indicate inconvenience from the uninhabitability of the structures resulting from defects in the construction. In my view, all of the above evidence more than adequately supports the award of general damages made by the trial court which made no reference to "mental anguish."

McFADDEN, Justice Pro Tem., dissenting:

The district court awarded $5,000 in general damages to the Mayrs and $7,500 in general damages to the Zanders. The appellant and respondents agree that these general damages were awarded for mental anguish resulting from breach of the construction contract.[1] However, appellant argues that the district court erred in awarding damages for mental anguish stemming from breach of the construction contract, while respondents argue that the trial court acted correctly. The majority affirms the award. To that extent, I dissent.

The Restatement of Contracts states the general rule regarding damages for mental anguish due to breach of contract. In *Umphrey v. Sprinkel*, 106 Idaho 700, 712, 682 P.2d 1247, 1259 (1983), Idaho has adopted the Restatement provision verbatim:

"In actions for breach of contract, damages will not be given as compensation for mental suffering, except when the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering

1. Although appellant and respondents agree that the general damage award was intended to compensate for mental anguish, damages for mental anguish are special damages. *See* D. Dobbs, Handbook on the Law of Remedies § 12.3 (1973). Special damages must be pled with particularity. I.R.C.P. 9(g). It should be noted that the counterclaim filed by the respondents did satisfy the requirements of I.R.C.P. 9(g).

for reasons other than mere pecuniary loss." Restatement of Contracts § 341 (1932).

*See also Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 847, 606 P.2d 944, 951 (1980). The general rule articulated in the Restatement has been widely adopted. *See Mack v. Hugh W. Comstock Associates, Inc.,* 225 Cal.App.2d 583, 37 Cal.Rptr. 466, 469 (1964); *Groh v. Broadland Builders, Inc.,* 120 Mich.App. 214, 327 N.W.2d 443, 444–45 (1982); *Fiore v. Sears, Roebuck & Co.,* 144 N.J.Super. 74, 364 A.2d 572, 573 (N.J.Sup.Ct. Law D. 1976); *Rogowicz v. Taylor & Gray, Inc.,* 498 S.W.2d 352, 355 (Tex.Civ.App.1973). *See generally* D. Dobbs, Handbook on the Law of Remedies § 12.4 (1973).

In line with the general rule, the majority view is that damages for mental anguish may not be recovered after breach of a construction contract. *See Mack v. Hugh W. Comstock Associates, Inc., supra; Groh v. Broadland Builders, Inc., supra; Fiore v. Sears, Roebuck & Co., supra; Rogowicz v. Taylor & Gray, Inc., supra.* Although some courts have allowed recovery for mental anguish stemming from breach of a construction contract, *see B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 671–73 (Ala.1979); *Hill v. Sereneck,* 355 So.2d 1129, 1131–32 (Ala.Civ.App.1978), I can see no justification for Idaho to deviate from the majority view which we adopted in *Umphrey v. Sprinkel, supra.* Accordingly, I would reverse the district court's award of general damages. Further, because general damages were improperly awarded, the award of $10,000 in attorney fees is clearly excessive and must be reconsidered.