716 P.2d 1333

**P.N. CEDAR, INC. Plaintiff-Respondent,**

**v.**

**D & G SHAKE COMPANY,**
**Defendant-Appellant,**

**No. 15579.**

Court of Appeals of Idaho.

March 19, 1986.

William J. Hines and Thomas B. Dominick, Boise, for defendant-appellant.

Anthony C. Anegon, Lewiston, for plaintiff-respondent.

SWANSTROM, Judge.

This appeal arises from the destruction by fire of a mill leased by D & G Shake Co. from P.N. Cedar, Inc. P.N. Cedar brought suit against D & G Shake and its owners-operators, seeking damages under two theories of recovery, negligence and breach of a lease agreement between the two companies. The owners-operators of D & G Shake were dismissed as parties just before trial. The jury, by special verdict, found that D & G Shake was liable for damages under both theories.

On appeal, D & G Shake raises several issues: (1) whether the court erred in allowing the jury to receive evidence of an alleged yard fire earlier on the day the mill burned, (2) whether the court erred in denying D & G Shake's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on the issue of negligence, (3) whether the court erred in allowing P.N. Cedar to recover damages for loss of the mill equipment, (4) whether the trial court erred in allowing the jury to consider the claim for lost profits and damages under the lease agreement, (5) whether the court abused its discretion in denying a motion for attorney fees and costs and (6) whether the court abused its discretion in the trial procedure followed. For reasons which follow, we vacate the judgment and remand for a new trial on the issue of damages.

The mill in question was designed to produce cedar shakes and shingles. It sat on ground owned by the Bureau of Indian Affairs (BIA). P.N. Cedar had purchased the mill from a third party and obtained a lease of the mill site from the BIA. After operating the mill for a time, Karen Schaefer, acting for P.N. Cedar, agreed to lease the mill and some of its equipment to D & G Shake. She wrote down a brief statement of certain lease conditions which John Gilroy, an owner-operator of D & G Shake, signed in behalf of his company. For a few weeks, until the mill burned, D & G Shake operated the mill. Waste materials from the manufacturing process were transported from the mill on a conveyor into a nearby burner. On the day of the fire, September 11, 1981, D & G Shake operated the mill from 7:00 a.m. to approximately 1:30 p.m. The employees then left the mill for the weekend. The mill burned to the ground between 6:00 and 7:00 p.m.

At the trial, a witness testified that he was at the mill around noon on the day it burned and observed a small fire in the mill yard approximately fifteen feet from the building. Whether this fire originated from a spark from the burner or from other causes was not made clear in the record. The man who noticed the fire testified that he informed an employee working at the mill about it. The witness said that the sprinkler system was not operating while he was at the mill.[1] Karen Schaefer also testified that the sprinkler was not operating when she was at the mill site at 4:00 p.m. the same day. She further testified that she did not observe a fire at that time. On the other hand, D & G Shake's foreman, who had worked at the mill that day, testified that the sprinkler system was on while the mill was in operation and after the mill had been closed for the day. The foreman further testified that when the mill was shut down for the day there was no fire in the yard and the yard was "wet down." Testimony of the owner of a similar mill was also introduced. He stated

1. The "sprinkler system" was a rotating sprinkler on the roof of the building which was used to dampen an area around the mill.

that fine cedar dust can catch a spark and burn beneath the surface undetected and that a slight wind could cause it to burst into flames. To avoid this, cedar sawdust should be stirred up thoroughly to allow water to reach the bottom layer of dust. The expert further testified that, depending on the dryness of the weather and the size of the fire in the burner, a mill operator should have a sprinkler on during the work shift and sometimes after the mill has closed for the day. After hearing the evidence, the jury awarded P.N. Cedar damages of $24,293 on both the negligence and contractual claims.

## I

■ D & G Shake contends that the trial court committed error by denying its motion in limine regarding the evidence of a yard fire at noon on the day the mill burned. D & G Shake asserts that this testimony was prejudicial and irrelevant, citing *Hoffman v. Barker*, 80 Idaho 372, 330 P.2d 978 (1958), for the rule that the existence of a condition prior to the time an act occurred is inadmissible. In *Hoffman* the Court stated:

The only ground for allowing the introduction of evidence of a condition existing some time prior to the time in issue is where there is no evidence of the actual condition at the time in question and where the condition is not a changing one but one which it might reasonably be considered would continue to exist. [Citations omitted.]

80 Idaho at 377, 330 P.2d at 980.

In the present case, there was no evidence of the actual condition of the mill and yard at the time the 6:00 p.m. fire occurred. P.N. Cedar's expert testified that a spark in fine cedar dust can lie dormant and smolder if not extinguished properly. D & G Shake argues that this testimony is not relevant to the noon fire because the witness who observed the fire at noon did not say that it occurred in cedar dust. However, the witness testified that the yard

fire occurred in the "bolt making" area. Bolt making consists of cutting a cedar log to a certain length and then splitting it to fit into a shake machine. The witness testified that the ground would be covered with little pieces of bark and cedar and wood shavings from a chain saw. We hold that a jury reasonably could infer that in this bolt making process cedar dust would accumulate; that a spark from the burner caused the noon yard fire; that all burning material was not extinguished; that under the hot and dry conditions the burning material eventually reached the mill causing it to burn. Therefore, we believe that, given the circumstances, the rule of relevancy stated in *Hoffman* did not bar the testimony about the yard fire that occurred six hours before the mill burned.

D & G Shake further argues the evidence also was irrelevant because Karen Schaefer testified that she did not observe any fire in the mill yard when she was there at 4:00 p.m. Karen Schaefer's testimony concerning the condition of the mill at a time closer to the 6:00 p.m. fire is said to be more relevant than evidence of the small yard fire observed at noon. However, this argument disregards the expert's testimony that cedar dust must be stirred and soaked in order to extinguish sparks burning on the bottom. The jury could have inferred that the yard fire at noon was not totally extinguished. Thus, while flames were not seen at 4:00 p.m., sparks could still have been burning undetected. Evidence is relevant when it is logically probative of a material issue for which it is being offered. *Briscoe v. Nishitani*, 105 Idaho 175, 667 P.2d 278 (Ct.App.1983), *overruled on other grounds, Country Insurance Company v. Agricultural Development, Inc.*, 107 Idaho 961, 695 P.2d 346 (1984). In this case, the small yard fire went to the issues of causation and negligence. We hold that the ruling of the trial court admitting the evidence of the yard fire was not error.

## II

D & G Shake next disputes the trial court's denial of several of its motions,

including its motion for summary judgment. Generally, an order denying a motion for summary judgment is not an appealable order. *Smith v. Idaho State University Federal Credit Union,* 103 Idaho 245, 646 P.2d 1016 (Ct.App.1982). However, the review of a final judgment allows a review of all interlocutory orders to which an objection has been raised. *Matter of Estate of Spencer,* 106 Idaho 316, 678 P.2d 108 (Ct.App.1984). D & G Shake recognizes that this court has adopted the general rule that an order denying a motion for summary judgment is not reviewable on appeal from a final judgment. *Evans v. Jensen,* 103 Idaho 937, 655 P.2d 454 (Ct.App.1982). D & G Shake contends that *Evans,* a court trial, can be distinguished from the present case, a jury trial.

■ We cannot agree with this reasoning. The rationale behind the relevant holding in *Evans* is that review of the denial of summary judgment motions would be unjust to the party who prevailed at trial after the evidence was more completely presented and would be inconsistent with the admonition given to trial courts to resist granting motions for summary judgment if doubt exists as to a party's right to a trial. The court noted that an improper denial of a motion for summary judgment does not constitute reversible error because the result becomes merged in the subsequent trial. *Evans v. Jensen, supra.* We fail to see how these reasons would be affected by whether the trial was before the court or the jury. Therefore, we decline to review the denial of the summary judgment motion.

We next turn to the denial of D & G Shake's motion for a directed verdict and for judgment notwithstanding the verdict regarding the negligence theory. In support of these motions, D & G Shake asserted that P.N. Cedar failed to introduce any evidence of negligent acts, omissions or breaches of duty by D & G Shake and its employees. On a motion for directed verdict and judgment notwithstanding the verdict, the moving party admits the truth of all the evidence and every legitimate inference that may be drawn in favor of the opposing party. *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981). If there is substantial evidence to justify submitting the case to a jury, motion for directed verdict should be denied. *Stephens v. Stearns, supra.* A similar standard exists for ruling on a motion for judgment n.o.v. *Brand S Corp. v. King, supra.* Substantial evidence does not necessarily mean uncontradicted evidence. "It is enough that the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper." *Stephens v. Stearns,* 106 Idaho at 253, 678 P.2d at 45.

■ We will not separately discuss the alleged error of the trial court in denying the motion for a directed verdict. D & G Shake made its motion at the close of the plaintiff's case, but did not renew the motion at the close of all of the evidence. Therefore, the right to assign error as to the denial of the motion has been waived. *DeAtley Corp. v. Otto,* 95 Idaho 586, 513 P.2d 638 (1973). In any event, the issue of the sufficiency of the evidence was also raised in the motion for judgment notwithstanding the verdict. On this issue we agree with the reasoning of the trial judge. From the evidence presented the jury could have inferred that the small fire observed at noon was the source of the fire which ultimately destroyed the mill. The jury also could have found that D & G Shake's employees failed to turn on the sprinkler system and that such failure contributed to the burning of the mill. A jury is entitled to draw an inference from circumstantial evidence when making a finding of causation. *Henderson v. Cominco American, Inc.,* 95 Idaho 690, 518 P.2d 873 (1974). We hold that the jury's finding of negligence was supported by substantial, although conflicting evidence. Several other

grounds urged in this motion are also raised as separate issues in this appeal. However, as hereinafter discussed, we hold that no reversible error has been shown in respect to those issues. Therefore, we affirm the order denying the motion for judgment n.o.v.

### III

The motion for a directed verdict made by D & G Shake was aimed at preventing the jury from considering any award of damages for destruction of either the mill building or its equipment. The motion was granted in regard to the building but denied as to the equipment.[2] D & G Shake asserts that the trial court erred in allowing P.N. Cedar to seek recovery of the value of the mill equipment destroyed in the fire without proving that all the equipment was movable personal property rather than fixtures. D & G Shake's argument is founded on the principle that a tenant may remove personal property from the leasehold premises but may not remove fixtures. It is argued that if the mill equipment were "fixtures" then P.N. Cedar has no right to recover for the value of the equipment lost in the fire.

However, Idaho by statute allows trade fixtures to be removed under certain circumstances. Idaho Code § 55–308 provides:

> A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for the purposes of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises.

Evidence presented at trial established that the equipment was very heavy and bolted to the mill. The trial court noted there was contradictory testimony as to whether the equipment could be removed from the mill without damage but the jury could find that the equipment could be removed without harm to the structure. After reviewing the evidence, we agree with the trial court. This was a question of fact for the jury to determine and the jury apparently resolved it in favor of P.N. Cedar.

D & G Shake further argues that there was no evidence as to which pieces of equipment were placed in the mill by P.N. Cedar and which were in the building when P.N. Cedar acquired the mill. D & G Shake asserts that if there were fixtures in the building when P.N. Cedar purchased the mill and leased the land, then P.N. Cedar would not have been allowed to remove those fixtures when it vacated the mill. However, because there was testimony by Karen Schaefer that "the mill" had been purchased from a third party, the jury could infer that this purchase included the equipment then contained in the mill. No evidence was introduced to prove that any other party had an ownership interest in or a claim to the equipment for which damages were sought. We hold that the jury was properly allowed to consider the value of each item of equipment in computing damages.

Here, the amount awarded by the jury is supported by evidence in the record relating to the value of the equipment lost in the fire. The value of the equipment was disputed. P.N. Cedar produced evidence that the equipment lost in the fire was valued at $49,516. D & G Shake presented evidence that the equipment it leased from P.N. Cedar had a value of $16,002. The jury returned a verdict of $24,293. As there were disputes about various items of equipment, the jury was not bound to an "either or" situation as to value. Moreover, the jury may have awarded damages for loss of some of the

---

**2.** As noted earlier, P.N. Cedar purchased the mill from a third party. The building sat on land leased from the BIA. P.N. Cedar did not cross appeal to contest the ruling on its claim for loss of the building. The terms of the BIA lease were not introduced into evidence.

equipment, but not for all of it. The jury may set the award at intermediate figures between the two amounts. *See Hunt v. Mayr*, 107 Idaho 129, 686 P.2d 74 (1984). Where a jury's damage award is supported by substantial, although conflicting, evidence it will not be disturbed on appeal.

Consequently, if loss of equipment had been the sole basis of P.N. Cedar's damage claim, we would have no difficulty upholding the jury's award. Unfortunately, however, the claim was not so limited. P.N. Cedar also sought damages for lost rental value of the destroyed mill. The verdict form was not intended to and did not provide for a breakdown of damages between equipment loss and loss of rental value. Therefore, we are unable to discern what part of the verdict award was intended to compensate for equipment loss and what part, if any, was intended to compensate for loss of rental. This brings us to the next issue raised by D & G Shake.

### IV

D & G Shake contends that P.N. Cedar's claim for "lost profits/rents" should not have been considered by the jury because the evidence supporting such a claim was insufficient. Much has been made of the fact that P.N. Cedar in the past had never profitably operated the mill. That evidence is largely immaterial to a claim for loss of rental where, as here, P.N. Cedar was no longer operating the mill but was "leasing it out" at the time of the fire. Nevertheless, we believe that from the evidence presented by P.N. Cedar the jury could only speculate as to the amount of rental value lost by P.N. Cedar as a result of the destruction of the main mill building and its equipment.

■ Essentially, P.N. Cedar showed only that it was receiving $800 per month from D & G Shake on a lease that ran only from month to month. The lease could have been terminated by D & G Shake upon thirty-days notice without liability for further rental payments. Of course, if this had been done, other operators could have leased the property from P.N. Cedar. Karen Schaefer testified that she "had been approached by two other businesses that were interested in leasing the mill." She did not testify that any particular rental or other terms were ever discussed with those "businesses." P.N. Cedar also did not establish that the mill would likely have been leased throughout the whole year rather than as a seasonal operation. As noted, P.N. Cedar did not introduce into evidence the terms of its lease of the ground from the BIA. The length of the remaining term of the BIA lease could—as a matter of fact and law—dictate the period of time for which lost rental value could be recovered by P.N. Cedar. *Cf. Wing v. Martin*, 107 Idaho 267, 688 P.2d 1172 (1984). Moreover, P.N. Cedar did not establish, by any evidence, what would be a reasonable time period for which D & G Shake ought to be held liable for lost rental income. That time period can vary greatly from case to case, depending on the circumstances. *See, e.g.* D. DOBBS, LAW OF REMEDIES § 5.11 at 383–90 (1973). In summary, we hold that because of a lack of substantial and competent evidence to prove the amount of lost rental income, the issue should not have been submitted to the jury.

■ P.N. Cedar argues that even if we hold that the evidence on lost rental income was insufficient, because there was substantial, competent evidence to uphold the jury's verdict on the equipment loss alone there was no prejudice to D & G Shake in allowing the jury to consider the claim for lost rental income. We have reviewed the cases cited by P.N. Cedar in support of this argument. *Archer v. Shields Lumber Co.*, 91 Idaho 861, 434 P.2d 79 (1967); *Tucker v. Palmberg*, 28 Idaho 693, 155 P. 981 (1916). *See also Tarr v. Oregon Short Line R.R. Co.*, 14 Idaho 192, 93 P. 957 (1908); *Harding v. H.F. Johnson, Inc.*, 126 Mont. 70, 244 P.2d 111 (1952). We think these cases are distinguishable. In each of them the

substantial evidence that supported the jury's verdict was, to a large degree, undisputed. Here that is not the case with respect to the equipment loss, as D & G Shake offered evidence disputing P.N. Cedar's proof as to equipment actually lost in the fire, the value of the equipment, and whether certain items were non-removable fixtures. The jury obviously did not accept some aspect of P.N. Cedar's proof because the jury's total verdict was only about half of the claim for equipment loss. The verdict was several thousand dollars more than the value D & G Shake's witness put on the lost equipment. This means that a substantial part of the jury's award *could* have been for lost profits. Accordingly, we must vacate the judgment and remand for a new trial on the issue of damages. The *liability* of D & G Shake for any damages is put into question by other alleged trial errors and we need to address those issues.

## V

D & G Shake asserts that the trial court abused its discretion in a number of decisions made during the course of the trial. Permitting P.N. Cedar to amend its complaint on the first day of trial is one of the questioned decisions. Previous to the amendment, P.N. Cedar pled the negligence cause of action against the Gilroys individually. As we previously discussed, this cause of action was dismissed by stipulation a week before trial. Two days later, P.N. Cedar made a motion to amend its complaint by substituting D & G Shake for the Gilroys on the negligence claim. Oral argument was heard and the motion was granted by the court on the first day of trial.

 It is in the trial court's discretion to allow an amendment to pleadings, unless to do so would deprive the complaining party of a substantial right. *Ada County Highway District v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983). It is argued that the amendment prejudiced D & G Shake by presenting a new theory of recovery against D & G Shake. However, well in advance of trial, D & G Shake was on notice that a negligence claim would be pursued. It is true that initially the claim was made against the Gilroys individually as opposed to their corporation. We believe this distinction is not significant in this case. It is undisputed that John Gilroy was the supervisor of the mill. Essentially, the same evidence would be presented and refuted whether or not the claim was against Gilroy in his individual capacity or against D & G Shake. In either case any negligent conduct of the mill employees bearing on the cause of the fire would likely be explored at the trial. The amendment did not change the amount of damages or the basic nature of the case. D & G Shake declined to move for a continuance after the amendment was granted. Prejudice to D & G Shake has not been shown. We hold that it was not an abuse of discretion to allow the amendment.

D & G Shake next asserts that the trial court abused its discretion in allowing P.N. Cedar to reopen its case for testimony of its expert. The witness was unable to be at the courtroom at his scheduled time due to bad road conditions. Counsel for P.N. Cedar informed the court of this problem and described the anticipated testimony. P.N. Cedar was allowed to close its case subject to reopening for the testimony of this witness. D & G Shake asserts it was prejudiced because the witness was allowed to testify subsequent to D & G Shake's motion for a directed verdict. D & G Shake contends, without further explanation, that the trial court could not have helped being influenced in its decision concerning the directed verdict motion by the fact that P.N. Cedar's expert witness was going to be called.

 Permitting a party to reopen its case is within the sound discretion of the trial court. *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973). Some reasonable excuse must be presented. *Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct.

App.1982). Inability to produce the evidence is an excuse which may persuade a trial court to reopen. *Allen v. Burggraf Construction Co.*, 106 Idaho 451, 680 P.2d 873 (Ct.App.1984). D & G Shake has failed to show unfair prejudice resulting from allowing P.N. Cedar to reopen its case. We hold that no abuse of discretion by the district court has been shown.

 D & G Shake also contends that the testimony of the expert exceeded the description of the testimony given prior to the motion for a directed verdict. Specifically, D & G Shake asserts that the testimony concerning the ability of fine cedar dust to catch a spark and smolder undetected was not included in the "preview" of the expert's testimony. We disagree. Counsel for P.N. Cedar disclosed that the witness would testify a mill operator should "literally soak the area down around the burner because of the *combustible nature of cedar and cedar sawdust.*" (Emphasis added.) This description was sufficient to disclose the purpose and extent of the witness' testimony.

### VI

D & G Shake asserts that certain ambiguous language in the lease agreement did not support a claim for damages on a contract theory. However, the jury found D & G Shake liable under both the contract and negligence theories. The jury found no contributory fault on the part of P.N. Cedar and the jury returned the same amount of damages under both the negligence and contractual claims. Because we have been shown no legal reason for setting aside the jury's finding of liability on the part of D & G Shake under the negligence theory, we do not need to address the alleged errors in respect to contract liability and damages.

### VII

Until shortly before trial, John and Delma Gilroy, as owners-operators of D & G Shake, were named as defendants in this lawsuit. By stipulation P.N. Cedar's complaint was dismissed as to the Gilroys. A motion was made that P.N. Cedar pay the Gilroys' costs and attorney fees in defending against the action. The district judge held that the Gilroys were not "prevailing parties" and he denied the motion. On appeal, D & G Shake asserts that the Gilroys were "prevailing parties" under Rule 54(e), I.R.C.P. and that the district court abused its discretion in denying the motion for costs and fees.

Initially, we note that the record does not disclose who made the motion for payment of the Gilroys' costs and fees after the complaint against them was dismissed. The Gilroys have not joined in this appeal. P.N. Cedar has not challenged D & G Shake's standing to raise this issue on appeal. We will address the issue.

"Mere dismissal of a claim without a trial does not necessarily mean that the party against whom the claim was made is a prevailing party for the purpose of awarding costs and fees." *Chenery v. Agri-Lines Corp.*, 106 Idaho 687, 692, 682 P.2d 640, 645 (Ct.App.1984). The determination of whether the Gilroys are a prevailing party is a factual question and the dismissal of a claim is only one of the many factors to consider. *Id.* A judge must consider "the final judgment or result of the action in relation to the relief sought by the respective parties...." I.R.C.P. 54(d)(1)(B).

 The court found it was "reasonable and prudent to include the individual defendants as defendants in this case." The court further stated that the "costs that were incurred in the defense of the individual defendants in this case were necessarily incurred in defense of the corporation defendant, D & G Shake Company." Based on these findings, and in light of the jury verdict returned against D & G Shake, the trial court found that the Gilroys, as owners of D & G Shake, were not prevailing parties under Rule 54, I.R.C.P. An award of attorney fees is in the sound discretion of the trial court. *Anderson v.*

*Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). We find no abuse of discretion in the denial of the Gilroys' costs and attorney fees.

We have reviewed the other alleged errors asserted by D & G Shake and find them to be without merit. In our view the trial proceedings were fair and free from any reversible error except as to allowing the jury to consider an award of damages for lost rental upon insufficient evidence. Accordingly, we vacate the judgment and remand for a new trial on the issue of damages for the equipment loss. Costs to respondent, P.N. Cedar. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.