506 P.2d 466

**STATE of Idaho, Plaintiff-Appellant,**

**v.**

**Larry ORTEGA, Defendant-Respondent.**

**No. 10841.**

Supreme Court of Idaho.

Feb. 15, 1973.

Webb, Tway & Redford, Boise, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., Wayne V. Mueleman, Asst. Atty. Gen., Boise, for defendant-respondent.

McFADDEN, Justice.

Larry Ortega, the defendant-appellant, was charged by information with the crime of robbery alleged to have been committed in Ada County on November 27, 1969. Following trial before a jury, which returned its verdict of guilty, the appellant was adjudged guilty of robbery and committed to the custody of the State Board of Corrections for a term not to exceed twenty-five years. It is from this judgment that the appellant has perfected this appeal.

Appellant makes two assignments of error. The first assignment is directed to the trial court allowing Lt. Brake of the Boise City Police Department to testify over appellant's objection as to certain facts told him by Mrs. Kelley. Earlier in the trial Mrs. Kelley had testified that she was employed in the "Seven-Eleven" store on Thirteenth and Brumbach on November 27, 1969. That evening shortly before 11:00 p. m. she was in the store alone when a man came in, followed shortly thereafter by a second man. The first man asked her for the money in the till, and, upon her refusal, he fired a gun into the floor; then she gave him the money, and the two men left. She testified as to the description of the two men. She testified that she had examined at various times a large number of photographs of men at the request of Lt. Brake and finally identified out of the group of about eight photographs the person who took the money. She described the firearm used and also testified that she had described the firearm to the police officers.

Lt. Brake, who was called as a witness by the state, testified that as a detective of the Boise Police Department he investigated the robbery of the "Seven-Eleven" store; that he interviewed Mrs. Kelley, and that she described the firearm used in the robbery. Appellant objected to this testimony on the ground that the testimony was hearsay. The trial court overruled this objection and Lt. Brake was allowed to testify as to the description of the firearm given by Mrs. Kelley.

Lt. Brake was questioned concerning the photographs he gave to Mrs. Kelley for examination, and then he was asked if he could state what she related to him concerning any of the pictures. An objection was again interposed that it was a hearsay statement. This objection was also overruled and Lt. Brake was allowed to testify that Mrs. Kelley identified the defendant from one of a series of photographs he had submitted to her.

The trial court in considering the objections interposed to Lt. Brake's testimony ruled that the testimony was accepted in evidence for the limited purpose of proving that the statements by Mrs. Kelley to Lt. Brake as related by him were in fact made without regard to the truth or falsity of each statement.

It is the conclusion of the Court that neither of the statements by Lt. Brake, i. e. regarding Mrs. Kelley's description of the firearm and her identification of the accused out of the last group of eight pictures fall within the definition of hearsay testimony. The appellant objected to the admission of Lt. Brake's testimony solely on the grounds of hearsay and raised no issue about the relevancy of the testimony.

The hearsay rule of evidence excludes extrajudicial statements by an out of court declarant which are offered to prove the truth of the matters stated therein. 6 Wigmore, Evidence, § 1766, pp. 177–178; McCormick, Evidence, § 225, p. 460 (3d Ed. 1954). However, an examination of Lt. Brake's testimony reveals that his testimony was relevant to prove that certain statements were, in fact, made. Since the appellant's cross-examination of Mrs. Kelley attempted to raise doubts whether she identified a weapon, Lt. Brake's testimony illustrated that she described a weapon *before* the weapon admitted in evidence was seized from the appellant. The appellant had ample opportunity to test the perception, narrative, memory and sincerity of both Mrs. Kelley and Lt. Brake during cross-examination. Furthermore, the cross-examination of Mrs. Kelley attempted to impeach her fairness and impartiality in identifying the appellant from the police photographs. Lt. Brake's testimony simply illustrated her conscientious and objective attitude in viewing the police photographs. See, United States v. Sharpe, 452 F.2d 1117 (1st Cir. 1971). Significantly, the district court carefully prefaced the admission of Lt. Brake's testimony in both instances with appropriate warnings that the statements were to be used only to show that the statements had been, in fact, made. Statements inadmissible to prove the truth of what they assert may be admitted if the fact of the assertion is in itself relevant irrespective of its truth. See, United States v. Press, 336 F. 2d 1003 (2d Cir. 1964), cert. den. 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559; Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968), cert. den. 395 U.S. 912, 89 S.Ct. 1761, 23 L.Ed.2d 224; State v. Johnson, 106 Ariz. 539, 479 P.2d 424 (1971); Crespin v. People, 488 P.2d 876 (Colo.1971); People v. Gonzales, 68 Cal.2d 467, 67 Cal. Rptr. 551, 439 P.2d 655 (1968); People v. Jackson, 64 Ill.App.2d 217, 211 N.E.2d 610 (1965); State v. Hale, 371 S.W.2d 249 (Mo.1963). In Quayle v. Mackert, 92 Idaho 563, 447 P.2d 679 (1968), this court held

that the hearsay rule does not apply to extrajudicial statements offered not for their truth, but merely for the purpose of showing that certain words were spoken. The trial court did not err in its rulings on the admissibility of these statements by Lt. Brake.

As a second assignment of error appellant urges that the trial court erred in not excluding certain admissions made by appellant during a custodial police interrogation; he asserts that such interrogation violated his constitutional rights.

The record concerning this assignment of error discloses that Lt. Brake while testifying on direct examination stated that he had seen Ortega in the barbershop in the jail and talked with him at that time. Lt. Brake testified that he had advised Ortega of his constitutional rights; and then he was asked to relate what Ortega said. At this time appellant objected on the basis of lack of foundation. This objection was sustained by the trial court, and a recess was called. The jury was excluded and proceedings were held in the absence of the jury, by way of an offer of proof by the prosecution.

During the interrogation of Lt. Brake in the absence of the jury, he testified that he had advised Oretga twice of his *Miranda* rights (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966)). One warning was given in writing, and the other given orally by Lt. Brake. In describing his oral warning, Lt. Brake testified that he told Ortega "he had the right to remain silent, anything he said would be used against him, he had the right to an attorney and to have him present, if he could not afford an attorney one would be appointed for him at state expense." At the time, only Lt. Brake and Ortega were present, and this event took place about 2:00 or 3:00 p. m., sometime during the last few days of April. After being asked if Ortega wanted an attorney, Lt. Brake testified: "I did not ask him if he wanted one, I advised him he had the right to have one present if he wanted one,

he said, 'I know my rights, I have been all through it.'" After appellant's objection was overruled, Lt. Brake then stated: "He [Ortega] stated he knew who ratted him off was the words he used—Ron Maus, and when I looked at him he was nodding his head."

On cross-examination of Lt. Brake during these proceedings, out of the presence of the jury, he was asked:

"Mr. Brake, when you advised Mr. Ortega of his rights covering these points, how much time did it take you to devote to this thing?"

Lt. Brake replied:

"Well, as I told you, each time I looked at him he was nodding his head in a normal turning fashion, it was clear to me he understood each one he looked at me and nodded his head, at the end I asked him if he understood these rights and he said, 'Yes.'"

According to the witness it took about 15 to 20 seconds to advise Ortega of these matters. After further examination and discussion concerning the prosecution's offer of proof, the court held that it would make a finding that the foundation shows the defendant was warned of his rights and he simply indicated he understood them and voluntarily waived them. Following this, the jury was returned to the courtroom.

While testifying before the jury, Lt. Brake stated he had conversed with appellant and advised him of his constitutional rights. Lt. Brake stated: "He made the statement he knew who ratted on him and I said, 'Who was it?' and he said, 'It was Ron Maus ratted me off,' those were the words he used."

The thrust of the appellant's second assignment of error centers on whether the appellant knowingly waived his *Miranda* rights prior to making the statement to Lt. Brake. The appellant does not contest that he was warned. The appellant argues that the quality of the warning was not sufficient for him knowingly to waive his rights, pointing to Lt. Brake's statement

that the warning was given in about 15 to 20 seconds. In effect, the appellant argues that the officer's short recitation of the *Miranda* warning is evidence in itself of his inability to understand and comprehend the right to counsel and the right to silence.

▮▮ Although the appellant urges this Court to adopt a "per se" rule of involuntary waiver of constitutional rights when the rights are recited summarily, we are not convinced that the element of time lapse by itself is an appropriate standard to assess a criminal defendant's comprehension and understanding of his constitutional rights. Nor are we convinced that the fact of a 15–20 second recitation of the *Miranda* warning in this case is sufficient to vitiate the appellant's waiver of those rights. There is no evidence in the record suggesting that Lt. Brake's concise recitation of the *Miranda* warning failed to apprise the appellant fully of his constitutional rights. Moreover, the appellant fails to explain his explicit waiver of those rights. Finally, the appellant offers nothing connecting the short recitation of the *Miranda* warning with any facts suggesting an involuntary waiver. We recognize that a criminal defendant's understanding and comprehension of his constitutional rights cannot be tested in entirely an objective manner. However, in this case there are no facts or suggestions of impropriety in advising the appellant of his constitutional rights.

▮ A defendant who objects to the admission of a statement is entitled to a fair hearing to assess both the underlying factual issues and the voluntariness of his confession. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.3d 908, 1 A.L. R.3d 1205 (1964); State v. Sandoval, 92 Idaho 853, 452 P.2d 350 (1969). In this case the prosecuting attorney laid a foundation showing that the appellant understood his rights and made a knowing, understanding, and intelligent voluntary waiver of them. The district court found that the appellant knew and understood his

rights and that he voluntarily waived them. Since there was sufficient evidence justifying the admission of the inculpatory statement voluntarily given after an affirmative waiver, we cannot find error in the district court's ruling. State v. Sandoval, supra; State v. Fisk, 92 Idaho 675, 448 P.2d 768 (1968); State v. Ross, 92 Idaho 709, 449 P.2d 369 (1968).

The judgment of the trial court is affirmed.

DONALDSON, C. J., and SHEPARD, McQUADE and BAKES, JJ., concur.