900 P.2d 201

Gerald D. HERRICK and Kathryn S. Herrick, husband and wife, Plaintiffs–Appellants–Cross Respondents,

v.

Doyle LEUZINGER and Judi Leuzinger, husband and wife, Defendants–Respondents–Cross Appellants.

No. 20361.

Court of Appeals of Idaho.

June 9, 1995.

Petition for Review Denied Aug. 25, 1995.

Ringert, Clark, Chtd., Boise, for appellants. Patrick D. Furey argued.

Marcus, Merrick & Montgomery, Boise, for respondents. Craig Marcus argued.

LANSING, Judge.

The plaintiffs, Gerald and Kathryn Herrick, filed suit alleging that Doyle and Judi Leuzinger had converted the Herricks' cattle to their own use and committed fraud. The Leuzingers asserted in defense that the Herricks' predecessors in interest had gifted the cattle herd to the Leuzingers. At the close of evidence the Herricks moved for a directed verdict, which was denied. The jury found in favor of the Leuzingers. The Herricks now appeal, asserting error in the denial of their motion for a directed verdict and numerous errors in the exclusion of evidence by the district court. We affirm the district court's denial of a directed verdict, but because we find that evidence was erroneously excluded by the district court to the Herricks' detriment, we reverse and remand the case for a new trial.

## I. FACTS

Prior to 1973 Mildred and Lewis Carlisle acquired land in Custer County known as the Broken Wing Ranch. The Carlisles obtained a registered brand certificate for use of an "ML" cattle brand. They also held a United States Forest Service permit entitling them to graze 150 head of cattle on Forest Service land.

In 1973 the Carlisles purchased forty-five head of cattle with the proceeds of a five-year bank loan. The bill of sale states that the cattle were sold to Lewis, and Mildred's name does not appear on the document. The Carlisles did not operate the ranch themselves or manage the cattle herd. Rather, neighboring ranchers and close friends, Doyle and Judi Leuzinger, leased the ranch from the Carlisles and managed their herd. All parties agree that from 1973 until 1975, the Leuzingers were managing the Carlisle herd in exchange for one-half of the profits from the yearly calf crop. During this period, if any of the calves were retained by the Carlisles to replace a cow or to expand the herd size, the Carlisles paid the Leuzingers half the value of that calf.

In 1982 Lewis Carlisle died, leaving all of his interest in the ranch to Mildred. In 1988 Mildred passed away. She bequeathed the ranch to a trust administered by First Interstate Bank. The beneficiaries of the trust were various relatives of Mildred. For convenience, the trust and beneficiaries are hereinafter referred to collectively as Mildred's heirs.

At various points in 1988 and 1989, the heirs, while visiting the ranch, asked the Leuzingers about the ownership of cattle that were being grazed on the ranch. The Leuzingers stated that none of the cattle belonged to the Carlisles. Mildred's heirs eventually sold their interest in the ranch to Gerald and Kathryn Herrick, the plaintiffs in the current action. The sale included a transfer of any rights the heirs possessed in the herd of cattle. When the Herricks began investigating to determine what cattle were encompassed within their purchase, the Leuzingers

again asserted that all of the cattle on the Broken Wing Ranch belonged to them.

On November 19, 1991, the Herricks brought suit against the Leuzingers for an accounting, alleging that the Leuzingers, as the Carlisles' managers, owed an accounting for assets. In January 1992, the Leuzingers answered and filed a counterclaim asserting that the Herricks had breached the Leuzingers' lease of the Broken Wing Ranch. Eventually, through discovery, the Herricks learned it was the Leuzingers' contention that in 1975 Lewis Carlisle had transferred the entire herd to the Leuzingers as a gift. Thereafter the Herricks amended their complaint to allege that the Leuzingers had converted the herd to their own use and had committed fraud.

The trial court bifurcated the trial, separating out the Leuzingers' counterclaim for breach of lease from the issues raised by the Herricks' complaint. A court trial on the breach of lease case was held in April 1992, and the court found for the Leuzingers.

A jury trial was then held on the Herricks' claims in October 1993. At this trial Doyle Leuzinger testified that in 1975 Lewis Carlisle had given the entire herd to the Leuzingers. He stated that out of gratitude for this gift, and to enable the Carlisles to obtain certain tax advantages from their ownership of the Broken Wing Ranch, even after the cattle were given to them the Leuzingers continued to split the yearly calf crop with the Carlisles. This sharing of the calf crop after 1975 was, according to the Leuzingers, a return gift to the Carlisles. In 1975 when Lewis allegedly gave the cattle to the Leuzingers, he executed a bill of sale which recited that Lewis Carlisle sold to Doyle Leuzinger seventy-eight head of cattle bearing the Carlisles' "ML" brand. Doyle Leuzinger testified at one point that this bill of sale was to transfer title and thereby effectuate the gift. At another point he testified that the bill of sale was executed because the Leuzingers were running their own cattle on United States Forest Service land for which the Carlisles' held a grazing permit. In order to graze their cattle on the land, he said, the Leuzingers had branded their own cattle with the Carlisles' ML brand in addition to the Leuzingers' brand. Doyle Leuzinger stated that he therefore asked Lewis Carlisle to execute the bill of sale in order to show that these cattle, though falsely branded with the ML brand, belonged to the Leuzingers.

From 1975 until Mildred's death in 1988, the Leuzingers continued to split with the Carlisles (and after Lewis' death, with Mildred) the yearly calf crop from those cows branded solely with the ML brand. During this period, the Carlisles continued to pay Leuzinger one-half the value of any calves retained and not sold at the yearly auction. In 1983, at Doyle Leuzinger's request, Mildred executed a bill of sale to the Leuzingers for seventy-four head of cattle. Doyle Leuzinger testified that this bill of sale was executed to again protect his title to his own cattle that were being grazed under the Carlisle grazing permit and were falsely branded with the ML brand.

In April 1988, after Mildred's death, Leuzinger presented the 1983 bill of sale to a state brand inspector who authorized Leuzinger to re-brand with his own brand 66 head of cattle bearing the ML brand.

At the close of the evidence in the October 1993 trial on the conversion and fraud claims, the Herricks moved for a directed verdict, arguing that the Leuzingers had failed to carry their burden of proof regarding the alleged gift. The trial court denied the motion, and the jury later returned a verdict for the Leuzingers. On appeal the Herricks contend that the district court erred in excluding certain evidence, giving an improper jury instruction, and denying the motion for directed verdict. The Leuzingers cross-appeal from the denial of a motion for summary judgment they had filed and the denial of their request for attorney fees in the breach of lease case which was tried to the court in April 1992.

## II. MOTION FOR DIRECTED VERDICT

We first address the Herricks' argument that they are entitled to a directed verdict on the Leuzingers' affirmative defense of gift. They contend that the trial evidence was insufficient to support a finding by the jury

that the Carlisles gave the herd to the Leuzingers. The Herricks point out that under Idaho law, proof of an enforceable gift must include a showing that the transferor had a present donative intent and that the gift was delivered to the donee with the donor immediately relinquishing all dominion over the object given. *See Christiansen v. Rumsey,* 91 Idaho 684, 429 P.2d 416 (1967); *Claunch v. Whyte,* 73 Idaho 243, 249 P.2d 915 (1952). Because it is undisputed that the Carlisles continued to receive income from the calf crops until Mildred's death, the Herricks argue there was no complete relinquishment of dominion over the cattle herd and that an essential element for the claim of gift was therefore missing.

When reviewing the disposition of a motion for a directed verdict under I.R.C.P. 50(a), we utilize the same standard that governs the trial court's decision. That is, we must determine whether, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury. *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977).

Applying this standard, we conclude that the district court correctly denied the Herricks' motion. The Leuzingers presented evidence that Lewis Carlisle expressed an intent to completely transfer all control over the cattle to the Leuzingers and that because the cattle were already on the ranch which they leased from the Carlisles, delivery was complete at the inception of the alleged gift. They also presented testimony from two of Lewis's friends who said Lewis had told them that he gave the cattle to the Leuzingers. As explanation for the fact that the Carlisles continued to receive half the income from the calf crops, the Leuzingers testified that this income was a gift back from them to the Carlisles, not a retention of control or limitation on the gift imposed by Lewis Carlisle. Although the Herricks presented evidence that called into question the credibility of this explanation from the Leuzingers, we cannot say that the evidence of gift was insufficient to submit the question to the jury. Accordingly, the district court's denial of the motion for a directed verdict is affirmed.

## III. EVIDENTIARY ISSUES

The Herricks maintain that the trial court committed error by excluding from evidence testimony about statements made by Mildred to her sister and three exhibits. This evidence was offered by the Herricks principally to show that Mildred and Lewis considered themselves to be the owners of the cattle herd both before and after the date when the Leuzingers allege Lewis gave the cattle away.

### A. HANDWRITTEN NOTEBOOK OF MILDRED CARLISLE

The Herricks contend the court erred in excluding a spiral notebook in which Mildred Carlisle made handwritten entries from 1973 to 1986. On their face, these entries purport to record the expenses and earnings of the cattle operation at Broken Wing Ranch for those years. The district court sustained the Leuzingers' objection that the notebook contents were hearsay.

On appeal, the Herricks aver that the notebook should have been admitted under the business records exception to the hearsay rule, I.R.E. 803(6). That rule provides an exception to the hearsay exclusion for any:

memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The premise for this hearsay exception is that business records possess a high degree of reliability because persons

engaged in business inherently have incentives to keep accurate and truthful records. *Curiel v. Mingo,* 100 Idaho 303, 305, 597 P.2d 26, 28 (1979); *Christensen v. Rice,* 114 Idaho 929, 933–34, 763 P.2d 302, 306–07 (Ct.App. 1988); 2 Kenneth S. Broun *et al.* McCOR-MICK ON EVIDENCE § 286 at 264 (John W. Strong ed. 4th Ed.1992). Prior to adoption of the Idaho Rules of Evidence, admission of business records was governed by I.C. § 9–414, which is similar to I.R.E. 803(6). Section 9–414 and Rule 803(6) have been interpreted broadly to liberally allow introduction of such records. *See Curiel v. Mingo,* 100 Idaho at 305, 597 P.2d at 28; *Beco Corporation v. Roberts & Sons Construction Company, Inc.,* 114 Idaho 704, 711, 760 P.2d 1120, 1127 (1988) *overruled on other grounds, Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 803 P.2d 978 (1990). In doubtful or close cases, evidence should be admitted under the business records exception. *Beco Corp.,* 114 Idaho at 711, 760 P.2d at 1127.

It is not essential that the person who actually prepared the record testify at trial. *Christensen,* 114 Idaho at 933, 763 P.2d at 306. As our Supreme Court recently stated:

I.R.E. 803(6) does not require a foundation of testimony by the person who prepared the document in order to admit the document as a business record. The general requirement for admission under I.R.E. 803(6) is that the document be "produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial." The comment to I.R.E. 803(6) points out:

Because records of regularly conducted activity are not normally self proving, as public records may be under Rule 803(8), the testimony of the custodian or other person who can explain the record keeping of the organization is ordinarily essential. The custodian need not have personal knowledge of the actual creation of the document nor need [the custodian] have been an employee of the business when the record was made. The test is whether [the custodian] has knowledge of the system used to make the record and not whether [the custodian] has knowledge of the contents of the record.

*Large v. Cafferty Realty, Inc.,* 123 Idaho 676, 683, 851 P.2d 972, 979, (1993) *quoting from* REPORT OF IDAHO STATE BAR EVIDENCE COMMITTEE, C. 803, p. 10 (Supplemental 6/1/85) (citation omitted).

In the present case, Doris Long, Mildred Carlisle's sister, testified that the entries in the cattle spiral notebook were in Mildred's handwriting, that it was Mildred's regular practice to annually make entries in the notebook, and that the notebook constituted the thirteen-year compilation of such records of income and expenses related to the cattle operation. Doris based her testimony upon personal knowledge, having assisted Mildred in maintaining her records, though not the notebook specifically, during Mildred's final illness. Doris testified that Mildred kept the spiral notebook and numerous receipts and other documents relating to the cattle in a folder labeled "cattle." Doyle Leuzinger testified that he regularly reported the transactions involving the cattle herd to both Lewis and Mildred prior to their deaths. Finally, the trial court heard the testimony of Robert Overstreet, a certified public accountant who compared the entries in the notebook to the various receipts and other records contained in the folder marked "cattle." Overstreet testified that the entries in the notebook accurately reflected information on the receipts and check stubs contained in the folder.

This evidence, taken together, established the necessary foundation to show that Mildred's spiral notebook fell within the Rule 803(6) hearsay exception. The testimony of Doris, who was a qualified witness by virtue of her familiarity with Mildred's record-keeping methods, indicated that the notebook entries were made regularly at or near the time of occurrence as part of the records of the cattle operation, and that this record was not prepared in anticipation of litigation. Further, the testimony of Robert Overstreet indicated that the notebook reliably reflected the receipts and check stubs showing income from and expenses of the cattle. Although this foundational testimony was offered at different times in the trial and not as a

cohesive "offer of proof," when the notebook was offered following all of the foregoing testimony, a sufficient foundation had been established to bring the notebook within the business records exception to the hearsay rule, and it should have been admitted into evidence.[1]

 The erroneous exclusion of evidence justifies setting aside a jury verdict only if substantial rights of the parties were affected by the error. I.R.C.P. 61; I.R.E. 103(a). In our view, the exclusion of the spiral notebook was sufficiently prejudicial to the Herricks that the verdict and judgment must be vacated. The Herricks were faced with the Leuzingers' assertion that cattle once belonging to the Carlisles had been gifted to the Leuzingers. The Leuzingers relied principally upon Doyle Leuzinger's own testimony of a conversation with Lewis Carlisle that had not been witnessed by any other person. With Lewis Carlisle now deceased, the Herricks had no ability to directly refute Doyle Leuzinger's version of that conversation but, of necessity, had to rely upon less direct evidence of Lewis and Mildred Carlisle's understanding regarding ownership of the cattle. The spiral notebook was indirect evidence that Mildred believed herself to be the owner of the herd. An inference of such belief on Mildred's part could be drawn both from the fact that such detailed records of the cattle operation were maintained and from the content of entries regarding particular expenses paid and income

received. The notebook entries would have been probative for the jury's determination as to whether the cattle had been gifted to the Leuzingers and, if not, the number of cattle owned by Mildred at the time of her death. Because the jury was prevented from considering this probative evidence, the judgment in favor of the Leuzingers on the fraud and conversion claims must be set aside and the case remanded for a new trial.

## B. STATEMENTS OF MILDRED TO DORIS LONG

Before trial, the Leuzingers filed two motions in limine seeking to exclude from trial any testimony by Doris Long regarding statements made by Mildred to Doris relative to ownership of the cattle. The district court apparently held that these statements were inadmissible parol evidence because they would alter or contradict the terms of the 1973, 1975 and 1983 bills of sale. At trial, the Herricks sought to elicit testimony from Doris regarding at least one statement, apparently made by Mildred in 1973 shortly after the Carlisles purchased the cattle.[2] According to the offer of proof, the proffered evidence was to the effect that Mildred said to Doris: "You won't believe it, but I'm in the cattle business;" to which Doris responded, "You?" Mildred then replied: "Yeah. Me, myself personally. I have gone into the cattle business." Upon objection by the Leuzingers, the district court again ruled this testimony inadmissible both because it violated the parol evidence rule and because it was

---

1. We note that the spiral notebook was admissible for a nonhearsay purpose as well. When they moved for admission of the notebook the final time, the Herricks offered it not for the truth or accuracy of the entries therein, but only to show that Mildred had maintained detailed records relating to the cattle as late as 1986, from which the jury could infer that Mildred believed she was still in the cattle business long after the Leuzingers contend that Lewis disposed of the cattle by gift.

 An out-of-court statement or writing is hearsay only if it is offered "to prove the truth of the matter asserted." I.R.E. 801(c). When a statement is not being offered as proof of the facts contained in the statement, but merely as proof that the statement was made, the hearsay rule has no application. *State v. Brooks*, 103 Idaho 892, 899, 655 P.2d 99, 106 (Ct.App.1982). Therefore, a statement that would be inadmissi-

ble hearsay if offered to prove the truth of the assertion is nonetheless admissible (generally with an appropriate limiting instruction to the jury) if the mere fact the statement was made is itself relevant. *State v. Ortega*, 95 Idaho 239, 241, 506 P.2d 466, 468 (1973); *Brooks*, 103 Idaho at 899, 655 P.2d at 106.

 In the present case, without regard to the accuracy of the entries, the notebook was relevant to Mildred's state of mind as to whether she believed that she owned a cattle herd. Therefore, when offered by the Herricks as evidence that Mildred kept records of the cattle business, but not for the truth of any of the entries, the notebook was admissible for a nonhearsay purpose.

2. Although it appears from the appellants' brief that more than one statement is at issue, no offer of proof was made at trial except the 1973 statement of Mildred to Doris.

hearsay. We therefore review each of these grounds for exclusion.

### 1. Parol Evidence Rule

■■■ The parol evidence doctrine is a rule of contract construction and provides generally that when a contract has been reduced to a writing that the parties intend to be a final statement of their agreement, evidence of any prior or contemporaneous agreements or understandings which relate to the same subject matter is not admissible to vary or contradict the terms of the written contract. *Tusch Enterprises v. Coffin,* 113 Idaho 37, 44, 740 P.2d 1022, 1029 (1987); *Chapman v. Haney Seed Co., Inc.,* 102 Idaho 26, 28, 624 P.2d 408, 410 (1981). In its application to contracts for the sale of goods, including the sale of cattle, this common law rule has been codified in the Uniform Commercial Code, I.C. § 28–2–202.[3]

The Leuzingers argued below and on appeal that Mildred's statements to Doris conflicted with three bills of sale. The first was the 1973 bill of sale to Lewis Carlisle evidencing the purchase of the herd. The second was the 1975 bill of sale from Lewis Carlisle to Doyle and Judi Leuzinger for seventy-eight head of cattle which the Leuzingers contend was given to effect a gift. The third was a bill of sale from Mildred Carlisle in 1983 to Doyle and Judi Leuzinger for sixty-three head of cattle.

■■■ The Leuzingers contend that Mildred's statements that she was going into the cattle business would contradict the 1973 bill of sale by indicating that Mildred was an owner of the cattle, while the bill of sale indicates that Lewis alone had purchased them. The parol evidence rule is inapplicable, however, for it excludes only extrinsic evidence of agreements or understandings that precede or are contemporaneous with the written contract; it does not preclude evidence of agreements or statements made after the writing. *Brewer v. Pitkin,* 99 Idaho 114, 116, 577 P.2d 1162, 1164 (1978); *Tusch,* 113 Idaho at 44, 740 P.2d at 1029. The bill of sale showing Lewis as purchaser does not obviate the possibility that Mildred subsequently acquired an interest in the cattle, by gift from Lewis or otherwise. Moreover, the community or separate property status of an asset acquired during a marriage is determined by the source of funds with which it was purchased, not by the fact that only one spouse is named as owner on a document of title. *Stanger v. Stanger,* 98 Idaho 725, 571 P.2d 1126 (1970); *Farmers Insurance Exchange v. Wendler,* 84 Idaho 114, 118, 368 P.2d 933, 935 (1962); *Bowman v. Bowman,* 72 Idaho 266, 270, 240 P.2d 487, 489 (1952).

The parol evidence rule likewise has no application vis-a-vis the 1975 bill of sale from Lewis to the Leuzingers, which the Leuzingers contend was delivered to evidence a gift. First, as noted above, the parol evidence rule applies only to evidence of agreements or understandings between the parties to the writing which vary or contradict the written contract. Absent any evidence that she joined or acquiesced in the alleged gift, Mildred was not a party to the writing; and her statements to Doris that she was going into the cattle business were not evidence of any agreement or understanding with the Leuzingers.

Second, even the Leuzingers, who are the proponents of the bill of sale and advocate for application of the parol evidence rule, acknowledge that the bill of sale is not an accurate expression of their agreement with Lewis. In direct contradiction of the bill of sale's statement that the cattle were being "bargained and sold to" the Leuzingers, the Leuzingers presented extrinsic evidence that

---

**3.** I.C. § 28–2–202 provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.

 (a) By course of dealing or usage of trade (section 28–1–205) or by course of performance (section 28–2–208); and

 (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Lewis contemporaneously said he was giving the cattle to them and that the bill of sale was intended to effectuate a gift. Moreover, at one point Doyle Leuzinger also testified that the 1975 bill of sale was intended to not only convey Lewis's cattle but also to essentially clear the title to the Leuzingers' own cattle, which carried both the Leuzingers' brand and the Carlisles' ML brand in order to take advantage of Carlisles' grazing rights. Both the Leuzingers' position that the bill of sale effectuated a gift and their testimony that it covered cattle the Leuzingers already owned are fundamentally inconsistent with their reliance upon the parol evidence rule. In short, the 1975 bill of sale does not, by virtue of the parol evidence rule, present an obstacle to the admissibility of Doris's testimony about Mildred's 1973 statements that she was entering the cattle business.

Finally, the 1983 bill of sale from Mildred to the Leuzingers provides no basis for exclusion of parol evidence for the same reasons that apply to the 1975 bill of sale. The Leuzingers themselves acknowledge that it, like the 1975 bill of sale, is not what it purports to be. Their evidence showed it was not a conveyance by Mildred but was a device used to again clear title to the Leuzingers' own cattle which falsely carried the Carlisle brand in order to gain use of grazing rights.

2. Hearsay

The district court also concluded that Mildred's statements to Doris were inadmissible as hearsay. The Herricks contend that the statements fell within the hearsay exceptions of I.R.E. 803(3) (then existing mental or physical condition) and 803(24) (the residual exception).

 Idaho Rule of Evidence 803(3) provides an exception to the hearsay rule for statements offered to prove the declarant's then-existing mental or physical condition. The rule provides that a hearsay statement is admissible if it is:

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a state-

ment of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The rationale for the Rule 803(3) hearsay exception is that the element of contemporaneity provides some assurance against fabrication. REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE, C 803 p. 4 (Supplemented 6/1/1985).

Rule 803(3) effected no change from previous Idaho law except, perhaps, with respect to statements of memory. *Id.*, at 4–6. Idaho law has long allowed evidence of statements of a decedent to show that she had considered herself to be the owner of certain property. In *Fredricksen v. Fullmer,* 74 Idaho 164, 258 P.2d 1155 (1953), an alleged purchaser of the decedent's real property produced a copy of a sale contract purportedly signed by the decedent and sought to compel specific performance of the contract by the decedent's estate. The estate denied that the contract was genuine and sought to introduce evidence of the decedent's statements made and letters written after the date of the alleged contract indicating that she believed that she was still the owner of the premises. The Court, citing its previous decision in the same case, *Fredricksen v. Luthy,* 72 Idaho 164, 238 P.2d 430 (1951), held the statements and letters were admissible despite a hearsay objection.

In *Crenshaw v. Crenshaw,* 68 Idaho 470, 199 P.2d 264 (1948), the parties disputed whether a deed, executed by the deceased grantor, was delivered to the grantee prior to the grantor's death. Both the grantor's estate and the grantee sought to introduce statements by the deceased grantor. The Idaho Supreme Court, in ruling the statements admissible adopted the general rule that:

When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the

delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them.

*Id.* at 476, 199 P.2d at 267.

Thus, by terms of I.R.E. 803(3) and the aforementioned decisions, the admissibility of Mildred's statements to Doris turns upon whether the statements were probative as to Mildred's state of mind about ownership of the cattle. It is apparent that Mildred's statements to Doris indicated her belief that she owned the cattle shortly after their acquisition in 1973, and the statements are therefore relevant for determining whether she had an ownership interest.

This evidence was relevant to a material issue in the action. The existence of donative intent was a central issue with respect to Leuzingers' contention that Lewis Carlisle gave the cattle to them in 1975. A gift occurs when there is a delivery of the asset to the donee with a present donative intent. *In re Estate of Lewis,* 97 Idaho 299, 302, 543 P.2d 852, 855 (1975). The person whose donative intent must be shown to prove a gift is, of course, the person who owned the property and thus had authority to give it away. If the property at issue is community property, it may not be given away without the consent of both husband and wife. *Koenig v. Bishop,* 90 Idaho 182, 186, 409 P.2d 102, 103 (1965); *Anderson v. Idaho Mutual Benefit Association,* 77 Idaho 373, 380, 292 P.2d 760, 764 (1956). Hence, evidence indicating whether the cattle were owned separately by Lewis or Mildred or were the community property of both was relevant. Therefore, upon retrial of this case, this evidence of Mildred's comments to Doris should be admitted unless the Leuzingers then concede that Mildred was an owner such that her donative intent was necessary to effect a gift of the cattle.

We agree with the Leuzingers, however, that these 1973 statements are not relevant to establish whether Mildred had a donative intent two years later when the gift allegedly was made. Therefore, if the Leuzingers concede on remand that Mildred was an owner of the cattle, evidence of these statements should be excluded because they would no longer be relevant on any disputed issue.[4]

## C. LETTER FROM LEWIS CARLISLE TO HIS ACCOUNTANT

Next the Herricks argue the district court erred in excluding a letter purportedly written by Lewis Carlisle in 1980 to his now-deceased accountant. In the letter, Lewis explained:

As you know we give the Leuzingers half the calves for running our cattle etc. We held back seven heifers this year so Millie paid Doyle Leuzinger half the market value of these heifers. . . .

The district court excluded this exhibit for lack of an evidentiary foundation.

Idaho Rule of Evidence 901 requires that when offering any physical exhibit, a proper foundation must be laid to show that the item is what it is represented to be. The rule states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This standard "requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authentication or identification." REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE, C 901 p. 1 (Supplemented 6/1/85) *quoting* 5 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 901(a)[01] at 16 (Supp.1983).

We conclude that the district court properly excluded the proffered letter. The Herricks made no effort to lay a foundation for admission of the letter through any witness. Instead, they argued only that the

---

4. The Herricks contend that other statements by Mildred to Doris made after 1975 were excluded by the court's order on the Leuzingers' motion in limine. However, because no offer of proof was made regarding any such statements, we cannot determine whether they are relevant to Mildred's belief of ownership or donative intent. We therefore express no opinion as to whether those additional statements would be admissible under I.R.E. 803(3).

Leuzingers' attorney had opened the door for admission of this letter by referring to it in his opening statement to the jury. This contention by the Herricks that reference to an exhibit during an opening statement will waive any objection when the exhibit is offered during the trial has not been supported by any citation of authority, and we find it to be without merit. Attorneys' opening statements often comment upon anticipated adverse evidence in order to defuse its impact or diminish its importance. We perceive no reason that such a comment should excuse the proponent of the evidence from laying an adequate foundation for its admission. Therefore, the trial court's exclusion of this letter was not in error.

Our ruling does not, of course, preclude the Herricks from again offering this evidence with a proper foundation in the event of a new trial on remand.

### D. DEPOSITION OF MILDRED CARLISLE

 The Herricks next claim as error the district court's exclusion of a portion of a deposition of Mildred Carlisle that was taken in another case. They sought to place in evidence part of the transcript of a deposition of Mildred taken in February 1988 during proceedings for her divorce from a man she had married following Lewis Carlisle's death. In that deposition the following questions and answers occurred:

Q. What is the property in Idaho?

A. The property is—in Idaho is a cattle ranch.

. . . .

Q. Are there presently cattle on it?

A. Yes.

Q. How many cattle do you have?

A. Total, I'll estimate about 300.

Q. And has that been the approximate amount of cattle for the last five years or so?

A. And I have someone else on the ranch so some of these cattle belong to him.

. . . .

Q. Is that a person who rents the property or is that like a supervisor that you hire?

A. He leases part of it to run his cattle and then he runs my cattle.

. . . .

Q. And has this setup with Mr. Lysinger [sic], has that—now long has that been going on?

A. It's been going for about 20 years.

Q. How many of the—are the 300 cattle yours plus his or does that include both?

A. That includes part of both. That includes both, yes.

Q. Do you know how many cattle you have?

A. Not totally.

Q. Is it around half and half or do you know?

A. Probably he has more.

The Herricks do not contend that this deposition testimony was admissible as direct evidence that Mildred owned the cattle, apparently conceding that it would be hearsay if offered for that purpose. Rather, they argue it was admissible to impeach the testimony of a witness called by the Leuzingers during their case in chief. The witness, Clark Munger, was an attorney from Arizona who had represented Mildred in the divorce proceedings in that state and was present during the deposition. Munger testified on direct examination that when he was representing Mildred he asked whether she owned any cattle and Mildred informed him that she had none. He also said that he never at any time heard Mildred say that she had a cattle herd. When it came time to cross-examine Munger, the Herricks' attorney apparently did not have a copy of Mildred's deposition transcript in the courtroom, and he therefore did not place the transcript in front of Munger but, rather, asked him whether he had heard Mildred state under oath in her deposition that she owned cattle on the Broken Wing Ranch. Munger responded that, to his recollection, Mildred had not made a definite statement but rather had "waffled" on that issue and had given ambiguous testimony. The day after Munger's testimony was completed and he had left Idaho to return to Arizona, the Herricks moved to have Mildred's deposition entered into evidence. The

Herricks contend that the deposition testimony was not hearsay because it was offered not for the truth of Mildred's statements, but only to impeach Munger's testimony that he never heard Mildred claim that she owned cattle.

As noted above, the hearsay preclusion of I.R.E. 802 applies when an out-of-court statement is offered to prove the truth of the matter stated and its value thus rests upon credibility of the declarant. If the evidence is offered for purposes for which the truth or falsity of the statement is irrelevant, the hearsay rule does not apply. For that reason, an out-of-court statement offered to impeach a witness's credibility is not hearsay. *United States v. Miller,* 874 F.2d 1255, 1271 n. 9 (9th Cir.1989), *cert. denied,* —— U.S. ——, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993); *United States v. Winkle,* 587 F.2d 705, 710 (5th Cir.1979), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); 1 Kenneth S. Broun, et al., McCORMICK ON EVIDENCE § 34 at 113 (John W. Strong, ed., 4th ed. 1992). In such circumstances it is not the truth of the statement that has evidentiary value, but rather its juxtaposition against the inconsistent testimony of the witness.

Munger's testimony that he never heard Mildred Carlisle say that she owned cattle was directly contradicted by the transcript of the deposition at which he was present as counsel. Regardless of whether Mildred's deposition testimony was true, the transcript had evidentiary value to draw into question the reliability of Munger's testimony. Therefore, the hearsay rule presented no obstacle to admission of the transcript for impeachment purposes.

Although we conclude that the Herricks' position has merit, we cannot find error in this case due to the timing of their motion for admission of the partial transcript. After establishing the necessary foundation, the Herricks' attorney properly could have read from the transcript during cross-examination of Munger and asked him whether he heard that testimony by Mildred. Alternatively, with appropriate foundation to establish authenticity, the pertinent portion of the transcript could have been placed in evidence during the Herricks' rebuttal case following

the Leuzingers' completion of their case in chief. We find no error in exclusion of the transcript in this case, however, because the Herricks attempted neither of these alternatives. Instead, the Herricks' only offer of the deposition transcript was made the day after Munger's testimony had been completed and while the Leuzingers were still in the midst of presenting their case in chief. The Herricks were not entitled to place this document into evidence in the midst of the Leuzingers' presentation of their defense. Therefore, we cannot conclude that the district court was in error when it excluded the evidence.

If, however, the partial transcript is properly offered as impeachment evidence on retrial, it would be admissible for that limited purpose.

### IV. JURY INSTRUCTION AND SPECIAL VERDICT

The Herricks claim that the district court committed error in giving jury instruction number fifteen, which stated:

"You are instructed that when used in these instructions the terms 'plaintiff's predecessors in interest' and 'Millie's successors in interest' refer to and mean 1. The personal representative bank, acting through its representatives who were involved in the probating of Millie's estate, including its attorney, Clark Munger ·..."

The Herricks contend that this instruction improperly told the jury that attorney Clark Munger was the plaintiffs' predecessor in interest. We cannot agree with the Herricks' interpretation of this instruction. It does not indicate that Munger himself should be considered the Herricks' predecessor in interest but that the bank, which was the personal representative of Mildred's estate, was a predecessor in interest. Munger is identified in the instruction only as a representative who acted for the bank. Therefore, we find no error in the instruction.

The Herricks also claim that there was an error in the special verdict form presented to the jury. We decline to resolve this issue due to the Herricks' failure to object to the special verdict form on the

record. Failure to object to the verdict form in the trial court constitutes a waiver of the issue. *Garrett v. Nobles,* 102 Idaho 369, 374, 630 P.2d 656, 661 (1981); *Barlow v. International Harvester Co.,* 95 Idaho 881, 890, 522 P.2d 1102, 1111 (1974).

## V. SUMMARY JUDGMENT MOTION BASED ON STATUTE OF LIMITATION

The Leuzingers cross-appeal from the denial of their motion for summary judgment, in which they asserted that the Herricks' claims were barred by the statute of limitation, I.C. § 5-218(4). The district court denied the motion, concluding that there existed genuine issues of fact material to this defense which required resolution by the jury. On appeal, the Leuzingers contend that even if there were errors in the trial that invalidate the jury verdict, they are nonetheless entitled to judgment based upon their statute of limitation defense.

We conclude that the order denying summary judgment is non-reviewable. The denial of a motion for summary judgment is ordinarily both non-appealable and non-reviewable. *Watson v. Idaho Falls Consolidated Hospitals, Inc.,* 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *Keeler v. Keeler,* 124 Idaho 407, 410, 860 P.2d 23, 26 (Ct.App.1993); *Evans v. Jensen,* 103 Idaho 937, 655 P.2d 454 (Ct.App.1982). The rationale for this rule is that, once all the evidence has been presented at trial, the final judgment in a case should be tested upon the record made at trial, not the less complete record existing when summary judgment was denied. *Evans,* 103 Idaho at 942, 655 P.2d at 459. In *Evans* we stated:

> This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on an interlocutory motion.

*Id.* The Leuzingers ask this Court to do precisely what this discussion in *Evans* rejected. We decline their request to review the denial of summary judgment after a complete trial has occurred.

Nor can we consider the issue as part of our review of the trial proceedings. At the conclusion of trial, the jury was presented with a special verdict form containing seven interrogatories. Question number four asked the jury to resolve the statute of limitation issue. Question number one, however, instructed that if the jury responded to question number one in favor of the Leuzingers, it should proceed no further but sign the verdict form and return it to the court. Upon resolving this first question in the Leuzingers' favor, the jury did as instructed and proceeded no further, leaving unresolved any factual issues regarding the applicability of the statute of limitation. Therefore, we have no jury verdict on this defense to review.

The Leuzingers did not request a ruling from the court on this defense by a motion for directed verdict before submitting the case to the jury or by any post-trial motion. The Leuzingers essentially request that this Court enter a directed verdict in their favor. We, however, will not rule on a matter that was not presented to the trial court. *See Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991); *Hoppe v. McDonald,* 103 Idaho 33, 644 P.2d 355 (1982); *Johnson Equipment, Inc. v. Nielson,* 108 Idaho 867, 870, 702 P.2d 905, 908 (Ct.App.1985). Thus, we conclude that the Leuzingers have presented no reviewable verdict or order regarding the statute of limitation defense for our consideration on appeal. Because we are remanding this case due to erroneous evidentiary rulings, the opportunity remains for the Leuzingers to further pursue the statute of limitation defense in the trial court.

## VI. ATTORNEY FEES

Finally, the Leuzingers cross-appeal from the denial of their request for attorney fees on their counterclaim for interference with their lease agreement. They contend they are entitled to attorney fees under I.C. § 12-

120(3), which provides that the prevailing party in a lawsuit arising from a commercial transaction is entitled to the award of a reasonable attorney fee.

 The term "commercial transaction" is defined by the statute to mean "all transactions except transactions for personal or household purposes." I.C. § 12–120(3).

In resisting this request for attorney fees, the Herricks rely upon *Bastian v. Albertson's, Inc.*, 102 Idaho 909, 915, 643 P.2d 1079, 1085 (Ct.App.1982), where we said that Section 12–120 was inapplicable to a lease of real property. This reliance is misplaced, for the *Bastian* decision was rendered before a 1986 amendment to Section 12–120 which added the provision mandating attorney fees in actions arising out of commercial transactions. 1986 Idaho Sess.Laws, ch. 205 at 511–12. A transaction for commercial farming operations was found to be a "commercial transaction" under I.C. § 12–120(3) in *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 275, 869 P.2d 1365, 1370 (1994).

The lease in question allowed Judi and Doyle Leuzinger to utilize the Broken Wing Ranch for the purpose of operating a commercial cattle ranch. They did not maintain a home on the ranch property. Therefore, the lease was a commercial transaction, and the Leuzingers were entitled to reasonable attorney's fees. Upon remand the district court shall award to the Leuzingers the reasonable amount of fees incurred for that portion of this case relating to alleged breaches of the lease.

The Leuzingers also requested attorney fees with respect to the remaining claims that were tried in October 1993. We need not address this request because we have determined that the verdict and judgment from that trial must be vacated.

## VII. CONCLUSION

In summary, we conclude that the trial court correctly denied the Herricks' motion for a directed verdict, and we decline to review the trial court's denial of the Leuzingers' motion for summary judgment. We find there was no error in the jury instructions. We also conclude, however, that the Herricks

were prejudiced by the erroneous exclusion of admissible evidence. We therefore remand this case to the district court for further proceedings consistent with this opinion.

Because each party has prevailed in part, no costs or attorney fees are awarded on appeal.

WALTERS, C.J., and PERRY, J., concur.