963 P.2d 1202

Allen LEAVITT, Plaintiff–Appellant,

v.

Mary E. SWAIN, Defendant–Respondent.

No. 23421.

Court of Appeals of Idaho.

Aug. 7, 1998.

Rehearing Denied Sept. 29, 1998.

Hepworth, Lezamiz & Hohnhorst, Boise, for Plaintiff-Appellant. John J. Janis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for Defendant-Respondent. Mark S. Prusynski argued.

LANSING, Chief Judge.

This is a negligence action arising out of a traffic accident. On appeal following a jury

trial, the plaintiff contends that the district court erred in denying his motions for partial summary judgment and for judgment notwithstanding the verdict on liability, in denying the plaintiff's motion for a new trial on damages, in conducting an inadequate investigation into jury misconduct and prohibiting the plaintiff from deposing a juror in relation to those allegations, and in ordering that the plaintiff pay the defendant's costs incurred after the plaintiff declined an offer of judgment. The plaintiff also contends that misconduct by defense counsel in closing argument necessitates a new trial.

# I

## FACTS AND PROCEDURAL BACKGROUND

On New Year's Day, 1994, the vehicles of Allen Leavitt and Mary Swain were involved in a head-on collision on Middleton Road in Canyon County. Following the accident, Swain admitted that she had lost control of her car on the icy roadway and may have slid over the centerline and into Leavitt's oncoming vehicle. Leavitt filed suit against Swain alleging that he was permanently disabled as a result of the collision. He requested damages for his pain and suffering, medical expenses, and loss of past and future earning capacity. Leavitt filed a motion for partial summary judgment on the issue of liability, arguing that the undisputed facts establish that Swain's negligence caused the accident. The district court denied the motion, and the case was eventually tried to a jury. The jury assigned seventy-five percent of the negligence causing the accident to Swain and twenty-five percent to Leavitt, and found that Leavitt had incurred damages in the amount of $37,300. Dissatisfied with the jury's award, Leavitt filed alternative motions for a new trial or an additur and for a judgment notwithstanding the verdict. Each motion was denied by the district court.

On appeal, Leavitt raises several claims of error, including the following: (1) that the district court incorrectly denied his motions for partial summary judgment, for a new trial, and for a judgment notwithstanding the verdict; (2) that during closing argument

defense counsel improperly implied that Swain lacked insurance coverage and improperly commented on Leavitt's character; (3) that juror misconduct requires a new trial; and (4) that the district court erred in concluding that Swain was entitled to costs under I.R.C.P. 68 on the basis of an offer of judgment that had been rejected by Leavitt. In light of our disposition of these issues, we find it unnecessary to address additional issues presented by Leavitt.

# II.

## THE DISTRICT COURT'S DENIAL OF LEAVITT'S MOTION FOR SUMMARY JUDGMENT IS NON-REVIEWABLE

■ Leavitt contends that the district court erred in denying his motion for partial summary judgment on the issue of liability. He maintains that Swain presented no evidence to refute Leavitt's showing that Swain caused the collision by crossing over the centerline into Leavitt's lane and that Leavitt was therefore entitled to judgment on liability as a matter of law. We do not consider this issue, however, as it is well established that an order denying summary judgment is nonappealable and non-reviewable. *Watson v. Idaho Falls Consolidated Hospitals, Inc.,* 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *Herrick v. Leuzinger,* 127 Idaho 293, 305, 900 P.2d 201, 213 (Ct.App.1995); *Keeler v. Keeler,* 124 Idaho 407, 410, 860 P.2d 23, 26 (Ct. App.1993); *Evans v. Jensen,* 103 Idaho 937, 941–42, 655 P.2d 454, 458–59 (Ct.App.1982). As explained in *Herrick,* "The rationale for this rule is that, once all the evidence has been presented at trial, the final judgment in a case should be tested upon the record made at trial, not the less complete record existing when summary judgment was denied." *Herrick,* 127 Idaho at 305, 900 P.2d at 213. *See also Evans,* 103 Idaho at 942, 655 P.2d at 459.

# III.

## THE DISTRICT COURT ERRED IN NOT GRANTING LEAVITT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT ON LIABILITY

After the return of the jury's verdict, Leavitt moved for a judgment notwithstand-

ing the verdict on liability pursuant to Idaho Rule of Civil Procedure 50(b). The district court denied the motion. Leavitt assigns error to this ruling.

When reviewing the disposition of a motion for a judgment notwithstanding the verdict, appellate courts utilize the same standard that governs the trial court's decision. That is, we must determine whether, admitting the truth of the non-movant's evidence and drawing every legitimate inference most favorably to the non-movant, there exists substantial evidence upon which the jury could properly find for the non-moving party. *Curtis v. Firth*, 123 Idaho 598, 605, 850 P.2d 749, 756 (1993); *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990); *Quick v. Crane*, 111 Idaho 759, 763–764, 727 P.2d 1187, 1191–92 (1986). "Substantial evidence" is more than a mere scintilla, *Adkison Corp. v. American Building Co.*, 107 Idaho 406, 408, 690 P.2d 341, 343 (1984); *Desert Irrigation Co. v. Tolmie*, 103 Idaho 673, 675, 651 P.2d 938, 940 (Ct.App.1982), *affirmed*, 106 Idaho 78, 675 P.2d 338 (1983); it is evidence of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper. *Stephens v. Stearns*, 106 Idaho 249, 253, 678 P.2d 41, 45 (1984). *See also Watson v. Navistar Int'l. Transp. Corp.*, 121 Idaho 643, 658, 827 P.2d 656, 671 (1992); *Barlow v. International Harvester Co.*, 95 Idaho 881, 886, 522 P.2d 1102, 1107 (1974). Whether the evidence is sufficient to create a question of fact for the jury is an issue of law, and we therefore do not defer to the decision of the trial court but exercise free review. *Curtis, supra; Quick, supra.* Although questions of negligence are ordinarily factual issues, a court may make a determination as a matter of law when the undisputed evidence leads to only one reasonable conclusion. *See Joyner v. Jones*, 97 Idaho 647, 650, 551 P.2d 602, 605 (1976); *Mico Mobile Sales & Leasing v. Skyline Corp.*, 97 Idaho 408, 412–14, 546 P.2d 54, 58–60 (1975); *Umphenour v. Yokum*, 118 Idaho 102, 104, 794 P.2d 1158, 1160, (Ct.App.1990); *DeMeyer v. Maxwell*, 103 Idaho 327, 331, 647 P.2d 783, 787 (Ct.App.1982).

Applying these standards, we conclude that the district court improperly denied Leavitt's motion. All of the evidence on the cause of the collision points to Swain's negligence, and we can find no evidence that Leavitt bore any fault. Each of the witnesses to the collision indicated that Swain lost control of her car when it started sliding on the icy road. Swain testified that she was driving in the northbound lane when the back end of her vehicle started to skid on the ice. As she tried to regain control of the vehicle, it slid to the right toward the roadside and then to the left toward the centerline. She said that it was at this instant that she saw the headlights of an oncoming vehicle and slammed on the brakes. The vehicles then collided. Swain also testified that she was unaware of anything Leavitt did or failed to do that caused or contributed to the collision.

Leavitt's version of the accident comports with Swain's. He testified that he was driving southbound when he saw the headlights of an approaching car dart to his left and then back to the right directly toward his vehicle. He indicated that he had no time to react before the approaching car crossed into his lane and slammed into his vehicle. Leavitt's passenger confirmed his story. She testified that due to the slick road conditions, Leavitt was traveling at about 30 to 35 miles an hour, well below the posted 50 mile per hour speed limit, when another car coming towards them suddenly started to go off the road and then came back across the road into their lane of travel and hit them.

Officer Bowerman, the police officer charged with investigating the accident, concluded that the collision occurred when Swain's vehicle crossed the centerline. He testified that the final resting place of the vehicles as well as the location of debris was consistent with the accident occurring just inside Leavitt's lane of travel.

Under two Idaho statutes, I.C. §§ 49–630 and 49–631, drivers are required to operate their vehicles on the right side of the highway and to pass oncoming vehicles on the right. It is negligence *per se* for a driver to violate these statutes unless a valid excuse for the violation is shown. *Teply v. Lincoln*, 125 Idaho 773, 775, 874 P.2d 584,

586 (Ct.App.1994). Icy road conditions do not serve to excuse a violation of these statutes. *Id.* at 776, 874 P.2d at 587. *See also Haakonstad v. Hoff,* 94 Idaho 300, 486 P.2d 1013 (1971). Therefore, uncontroverted testimony that Swain's car slid across the center line was sufficient to establish her negligence *per se.*

■ Swain's counsel attempted during cross-examination to discredit Officer Bowerman's opinion as to the point of impact by calling into question his investigative techniques as well as his interpretation of the evidence. This cross-examination reasonably could have led the jury to discredit and disregard the officer's opinion that the vehicles collided in Leavitt's lane, but the cross-examination produced no affirmative evidence that the accident occurred in the other lane or that Leavitt was in any way negligent in responding to the sudden erratic movement of Swain's vehicle.

If the cross-examination convinced the jury that Bowerman's opinion was unreliable, then the jury was left with only the testimony of Leavitt, Swain and Leavitt's passenger addressing the cause of the accident. This testimony included no evidence of any negligence on the part of Leavitt. Therefore, there was no evidentiary basis for the jury's apportionment of part of the negligence to him, and the district court's denial of the motion for a judgment notwithstanding the verdict on the issue of liability was in error. The jury's assignment of twenty-five percent of the negligence to Leavitt must be set aside.

## IV.

### MOTION FOR NEW TRIAL

■ Next, we consider whether the district court abused its discretion in denying Leavitt's motion for a new trial on damages. Idaho Rule of Civil Procedure 59(a)(5) authorizes the court to grant a new trial where the jury's award of damages was excessive or inadequate, appearing to have been given under the influence of passion or prejudice. A trial judge's decision on a motion for new trial will be upheld on appeal unless there has been an abuse of discretion. *See Quick*

*v. Crane,* 111 Idaho at 770, 727 P.2d at 1198. In reviewing a trial court's discretionary decision we employ a three-part inquiry: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of that discretion and consistent with any applicable legal standards; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *State v. Larsen,* 129 Idaho 294, 297, 923 P.2d 1001, 1004 (Ct.App.1996). We conclude that the district court here erred as to the second element by not utilizing the applicable legal standard.

The proper focus for a trial court when addressing a motion for a new trial based upon inadequate or excessive damages was described by the Idaho Supreme Court in *Dinneen v. Finch,* 100 Idaho 620, 625–26, 603 P.2d 575, 580–81 (1979):

Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law."

Importantly for purposes of the present case, "the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to a trial court ruling upon a motion for a new trial." *Id.* at 626, 603 P.2d at 581, *quoting Blaine v. Byers,* 91 Idaho 665, 670, 429 P.2d 397, 402 (1967). *See also Quick,* 111 Idaho at 770, 727 P.2d at 1198.

■ In the present case, it does not appear that the district court made its own assessment of damages and compared it to the jury's award as required on a motion for a new trial on damages. Rather, in ruling on

this motion, the court simply stated, "The court has found there to be sufficient evidence to support the jury verdict in this case and will not grant a new trial on these grounds." This disposition is nearly identical to that in *Quick, supra,* where the trial court disposed of the defendant's motion for a new trial on damages or a remittitur, along with a motion for judgment n.o.v., with the comment, "It is the court's feeling that there is ample evidence before this jury to justify these verdicts." In *Quick,* the Supreme Court observed that this explanation of the court's decision "does not reveal whether the trial judge appreciated the differences between a judgment n.o.v. and a new trial based on I.R.C.P. 59(a)(6), nor does it indicate whether he applied the correct standard for either." The same must be said for the trial court's decision here.[1]

■■■When a trial court exercising a discretionary function does not apply the legal standard governing its discretionary choices, the proper appellate response is to vacate its decision and to remand the case for reconsideration. *See e.g., Holmes v. Holmes,* 125 Idaho 784, 788, 874 P.2d 595, 599 (Ct.App. 1994); *Roll v. City of Middleton,* 115 Idaho 833, 839, 771 P.2d 54, 60 (Ct.App.1989). We therefore must remand this matter to the district court for reconsideration of Leavitt's motion for a new trial on damages. In reassessing this motion the district court may take into account our determination that the jury's assignment of twenty-five percent of the negligence to Leavitt was unwarranted.

If on remand the district court determines that Leavitt's motion for a new trial should be granted because the jury verdict appears to be the product of passion or prejudice, the remaining issues discussed below will be moot, as each addresses questions specific to the previous trial. However, because the

district court may again deny the motion for a new trial, the remaining issues must be addressed by this Court.

## V.

## CLOSING ARGUMENT

Leavitt asserts that Swain's defense counsel made two improper statements during his closing argument and that these statements were so prejudicial as to necessitate a new trial. First, Leavitt complains of the following comments by the defense attorney:

> I thought of something that happened to me this week with my daughters. I have two daughters. Neither one of them drives, fortunately. I'll be very fearful when they do. But after a couple of days of frustration on this case ... I went home and told my 12–year–old daughter, when you start driving, if you ever have the misfortune of running into somebody, don't run into somebody like Allen Leavitt.

According to Leavitt, these comments amounted to an expression of the defense attorney's personal belief about Leavitt's poor character or lack of credibility. He argues that the statements were an attempt "to portray him as a sleazy and bad person, and defense counsel personally vouch[ed] for that belief."

■■■ Arguments to a jury that express an attorney's personal belief or opinion as to the credibility of a witness or the justness of a cause are improper and may rise to the level of unprofessional conduct. *See State v. Garcia,* 100 Idaho 108, 111, 594 P.2d 146, 149 (1979); JACOB A. STEIN, CLOSING ARGUMENT § 38, at 155 (1996); Idaho Rule of Professional Conduct 3.4(e).[2]

■■■ Taken out of context, the challenged statements may appear inappropriate, but

---

1. In a separate section of the district court's order addressing Leavitt's motion for an additur in lieu of a new trial, the district court noted that an additur could be issued only if the court "determines that the disparity between the Court [sic] and the jury's evaluation of damages is sufficiently large to suggest that the jury's evaluation was the result of passion or prejudice." Nevertheless, the court deemed it unnecessary to reach the disparity issue because it had already determined that an order for a new trial, the

necessary alternative to an additur, was not warranted.

2. Rule 3.4(e) of the Idaho Rules of Professional Conduct states, "[A] lawyer shall not: in trial, ... assert personal knowledge of facts in issue ... or state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant...."

when considered in conjunction with the statements that immediately followed them, a different, acceptable, message emerges. Swain's counsel continued by stating, "I don't know how she can avoid it. You can't pick your accidents. But ... I hope that anybody ... involved in an accident, my daughters or whatever, they are going to pick somebody that you can verify what the damage is." Thus, when viewed in context, the statements of counsel were not an attack on Leavitt's character but comments about the difficulty in ascertaining the amount of damage he actually incurred as a result of the accident.

■ Leavitt next contends that in closing argument defense counsel improperly implied to the jury that Swain was uninsured. Idaho Rule of Evidence 411 generally prohibits the admission of evidence that a person was or was not insured against liability.[3] The purpose of the rule, as explained in *Lehmkuhl v. Bolland,* 114 Idaho 503, 508, 757 P.2d 1222, 1227 (Ct.App.1988), "is to assure that jurors reach their conclusions on liability based solely upon the facts at issue and upon the merits of the case, rather than upon passion or prejudice which may arise from unwarranted consideration of insurance coverage." Leavitt maintains that Swain's counsel violated this rule when, in response to Leavitt's request for an award of $510,000 in damages, he stated, "This accident did not ruin Allen Leavitt's life. It did not ruin him to the extent that $510,000 can ruin Mary Swain."

We agree with Leavitt's assertion that defense counsel's statement violated I.R.E. 411. The effect of the comment was to intimate to the jury that Swain lacked liability insurance coverage. In *Olson v. Prayfrock,* 254 Minn. 42, 94 N.W.2d 540, 541–42 (1958), the Minnesota Supreme Court found that an attorney had improperly commented on insurance when, during closing argument, he said, "I

have complete confidence in this jury ... and we will not be a party to imposing upon [the defendant] financial ruin...." Likewise, the Missouri Court of Appeals held that it was improper for defense counsel to argue that the jury should "think what it's going to mean to this boy if you saddle him with a judgment...." *Collins v. Nelson,* 410 S.W.2d 570, 577–78 (Mo.Ct.App.1965). *See also* Joanne Rhoton Galbreath, Annotation, *Counsel's Argument Or Comment Stating Or Implying That Defendant Is Not Insured And Will Have To Pay Verdict Himself As Prejudicial Error,* 68 A.L.R. 4th 954 (1989 & Supp.1997).

■ Although an I.R.E. 411 violation occurred, it does not necessarily follow that a new trial on the damages question is required. Leavitt's objection to the offending comment was sustained by the district court. In addition, the court's general instructions to the jury included Idaho Jury Instruction 101 with its admonition that "No insurance company is a party to this action. You must refrain from any inference, speculation or discussion about insurance."[4] The jury was also told that "arguments and remarks of the attorneys involved in this case are intended to help you in understanding the evidence and in applying the instructions. They are not themselves evidence." Generally, improprieties in a closing argument may be remedied by curative instructions. *See State v. Campbell,* 104 Idaho 705, 718, 662 P.2d 1149, 1162 (Ct.App.1983) (holding that improper statements made by a prosecutor during closing argument were harmless because the trial court sustained objections to the remarks and the jury was previously instructed to disregard comments of the attorneys that did not conform to the evidence); *State v. Tupis,* 112 Idaho 767, 771, 735 P.2d 1078, 1082 (Ct.App.1987) (stating that a prosecu-

---

3. Idaho Rule 411 states, "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

4. The first sentence of this instruction has been criticized as being misleading in that it may be interpreted to mean that there is no insurance coverage involved. *Lehmkuhl v. Bolland,* 114 Idaho at 511, 757 P.2d at 1230 (Burnett, J., specially concurring). However, this I.D.J.I. instruction has never been modified and remains the standard instruction endorsed by the Idaho Supreme Court.

tor's misstatement of law was cured by the district court's admonishment that the jury should refer to a correct statement of the law in the jury instructions). Accordingly, we hold that the offending statement does not necessitate a new trial.

## VI.

## INVESTIGATION OF ALLEGED JUROR MISCONDUCT

Leavitt's next challenge to the jury's verdict presents issues regarding the appropriate handling of a claim of juror misconduct. Leavitt contends that the district court conducted an inadequate investigation into allegations of juror misconduct and obstructed Leavitt's own investigation when the court granted a protective order prohibiting Leavitt from taking the deposition of a juror to determine whether extraneous prejudicial information had been brought to the jury's attention.

Following completion of the trial, Leavitt was approached by an individual who was in an art class taught by one of the jurors. The art student indicated that the juror/teacher, V.W., had discussed the trial with several members of the art class. V.W. told them that during the trial she contacted a relative, an orthopedic surgeon who specialized in treating injuries like the one sustained by Leavitt, and discussed with him the type of injury Leavitt had incurred. V.W. told the class that she asked the physician "whether the type of injury involved should be associated with a significant disability as [Leavitt] was claiming," to which the physician reportedly answered, "Absolutely not." V.W. also told the students that the physician indicated "that athletes have this type of injury all the time, and ... that after physical therapy they are able to go back to athletics again." According to the student, V.W. also stated that it was a "miracle" that she was on the jury because with her nursing background and the information she received from the physician, "she was able to evaluate the plaintiff's injury for the jury."

Armed with this information Leavitt contacted the district court and opposing counsel about the possibility that extraneous infor-

mation had been considered by the jury. The district court decided to investigate by interviewing the jury foreperson. The interview revealed that the foreperson was unaware of any information of this type reaching the jury. He did disclose, however, that during deliberations, V.W. "made the comment ... that the doctor who had operated on Mr. Leavitt's shoulder liked to operate. That was one of the things he liked. Some doctors think its quicker to operate, some doctors like to do the compare [sic] route." Based on these statements and the initial allegations, Leavitt suggested that an interview of V.W. was also in order. The district court declined, however, to conduct any further inquiry.

Following completion of the district court's investigation, Leavitt sought to conduct his own interview of V.W. By that time, V.W. had retained an attorney to represent her in the matter. Through her attorney, V.W. declined to be interviewed informally but agreed to submit to a deposition regarding her conduct as a juror. Before the deposition took place, counsel for Swain filed a motion for a protective order to prevent the deposition. The district court granted the motion, prohibiting Leavitt from deposing V.W. Leavitt argues that the district court erred when it limited its own investigation to only an interview of the jury foreperson while also prohibiting Leavitt's attorney from securing V.W.'s testimony relative to the alleged misconduct.

■ A jury verdict may be challenged, and a new trial ordered, if extraneous prejudicial information was improperly brought to the jury's attention or any outside influence was improperly brought to bear upon a juror. I.R.C.P. 59(a)(2); I.R.E. 606(b). When it appears that the jury may have been exposed to such prejudicial extrinsic evidence or influence, it is the duty of the trial court to conduct a reasonable investigation to determine whether jury misconduct actually occurred. *State v. Migliaro*, 28 Conn.App. 388, 611 A.2d 422, 426 (1992); *State v. Childers*, 80 N.C.App. 236, 341 S.E.2d 760, 765 (1986); *Commercial Union Ins. v. Moorefield*, 231 Va. 260, 343 S.E.2d 329, 333 (1986), and to determine whether

the misconduct, if any, reasonably could have resulted in prejudice to either party. *Roll v. City of Middleton*, 115 Idaho 833, 837, 771 P.2d 54, 58 (Ct.App.1989). However, "[t]here is no magic formula that the trial court must follow in conducting this inquiry." *Migliaro, supra.* Rather, the method and extent of the investigation is left to the sound discretion of the trial court. *Migliaro*, 611 A.2d at 426–27. *See also State v. Church*, 577 N.W.2d 715 (Minn.1998); *State v. Willis*, 332 N.C. 151, 420 S.E.2d 158, 168 (1992); *State v. Scherzer*, 301 N.J.Super. 363, 694 A.2d 196 (App.Div.1997); *Commercial Union, supra.*

The nature and scope of the requisite judicial inquiry will necessarily vary from case to case. We are of the view, however, that the investigation must be such as could generally be expected to disclose whether the specific alleged misconduct actually occurred. While in some circumstances an inquiry of the jury foreperson alone might satisfy this objective, we conclude that in this case it fell short. The type of misconduct alleged here could have occurred without the foreperson's knowledge; V.W. may have shared extraneous information with jurors other than the foreperson. Therefore, the trial court's investigation was not broad enough to permit a confident conclusion that the alleged misconduct did not occur.

 The necessary scope of a trial court's inquiry into juror misconduct turns, in part, upon the extent to which the litigants themselves have been able to investigate the allegations and develop evidence for the court's consideration. In this case, V.W. was unwilling to speak with Leavitt's counsel, and Leavitt was prevented from taking her deposition.[5] Therefore, Leavitt was unable to independently develop evidence that might have rectified the shortcomings in the trial court's inquiry. We conclude, accordingly, that the insufficiency of the court's investigation requires that the question of juror misconduct be revisited by the trial court on remand.

If the trial court on remand decides *not* to grant Leavitt's motion for a new trial on

damages on the ground that the jury's damage award was the product of passion or prejudice, the trial court must fashion a remedy for the undue curtailment of its investigation into the alleged juror misconduct. In view of the time that has passed since the jury deliberations in this case, the district court will have to consider whether it can conduct an effective investigation at this time. If the court finds that further inquiry of V.W. or other jurors is unlikely to yield accurate information due to the passage of time, the court may grant a new trial on damages as a remedy.

## VII.

### RULE 68 OFFER OF JUDGMENT

Prior to trial, Swain submitted an offer of judgment to Leavitt in the amount of $25,000, which Leavitt rejected. Later, the jury determined Leavitt's damages to be $37,300. This award was reduced, however, by the twenty-five percent negligence allocated to Leavitt, leaving a net jury verdict of $27,975. Then, upon a motion by Swain, the district court gave Swain a credit for pre-litigation payments made by her insurer to Leavitt in the amount of $7,000. Thus, the amount owed to Leavitt shrank to $20,975. The district court held that since the amount due Leavitt was less than the pre-trial settlement offer of $25,000, Swain could not recover her post-offer costs and was obligated to pay Leavitt's post-offer costs pursuant to I.R.C.P. 68.

On appeal, Leavitt argues that the court erred in deducting the $7,000 pre-litigation payment from the jury award in applying Rule 68. We need not reach this issue, however, because we have held that the jurors' assignment of twenty-five percent of the negligence to Leavitt must be set aside. When that twenty-five percent reduction is reversed, Leavitt's net award (assuming the $7,000 deduction was proper) is $30,300, which exceeds Swain's offer of judgment. If the trial court does not grant a new trial on the damages issue on remand, either on the

---

5. We imply no opinion as to whether or under what circumstances the post-verdict deposition

of a juror is permissible.

basis that the jury's damage award was inadequate or on the basis of jury misconduct, judgment must be entered for Leavitt in the amount of $30,300 plus his costs incurred both before and after the offer of judgment pursuant to I.R.C.P. 68(b).

## VIII.

### CONCLUSION

Because we conclude that there was no evidence presented to the jury to support its verdict finding Leavitt twenty-five percent at fault for the collision, we reverse the district court's denial of Leavitt's motion for a judgment notwithstanding the verdict on the issue of liability. We also reverse the order directing Leavitt to pay Swain's post-offer costs under I.R.C.P. 68(b). We remand for reconsideration under the correct standard Leavitt's motion for a new trial on damages. If that motion is not granted on remand, then further investigation into the allegations of juror misconduct must be conducted. If the district court concludes that due to current circumstances it cannot be determined whether jury misconduct occurred, a new trial on the damages issue must be ordered. Costs on appeal are awarded to appellant.

PERRY and SCHWARTZMAN, JJ., concur.